STATE OF CONNECTICUT *v.* ANONYMOUS (1978-4)*

APPELLATE SESSION OF THE SUPERIOR COURT

---

* Thus entitled, in view of General Statutes § 54-90.

DAVID M. SHEA, J. The defendant was found guilty by a jury of disorderly conduct in violation of General Statutes § 53a-182 (a) (2) and of harassment in violation of General Statutes § 53a-183 (a) (3). She has appealed assigning error in the denial of her motion to set aside the verdict. In this appeal she claims that the charge to the jury was deficient in that it failed to circumscribe the language of the two statutes involved within the limits required by the first amendment prohibition against restrictions upon freedom of speech, and she also claims error in a ruling upon evidence.

From the statements of facts in the briefs it appears that the jury could have found that on the day of the alleged offenses the complaining witness and her friend were traveling to work when they passed the defendant in another car. When the car in which the complainant was riding turned into the

parking lot of the restaurant where she worked, the defendant's car, which had been following, drove up close to the complainant, who had by then emerged from her car, and the defendant shouted from the car window that the complainant was a "tramp," that her mother was a whore and had gone to bed with the defendant's husband, and that the defendant was "going to get" the complainant this time. While the defendant was making these insulting remarks, the complainant and her companion walked toward the restaurant and entered. This incident was the basis for the disorderly conduct charge.

On the same evening the defendant telephoned the complainant at the restaurant where she was working. After the complainant was called to the phone, she heard the defendant repeat substantially the same insults as those which had been made earlier in the parking lot of the restaurant. The harassment charge was based upon this telephone call.

I

The defendant claims that her conviction under General Statutes § 53a-182 (a) (2) was a violation of her constitutional right of free speech because of the overbroad language of the statute, which the trial court failed to confine within constitutional limits. The pertinent portion of the statute provides: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (2) by offensive or disorderly conduct, annoys or interferes with another person . . . ." The charge gave the jury the statutory definitions of "intentionally" and "recklessly."[1] "Offensive con-

[1] General Statutes § 53a-3 provides, in pertinent part, that "(11) a person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct; . . . (13) a

duct" was described as "conduct which under contemporary community standards is so grossly offensive to a person who actually overhears it or sees it as to amount to a nuisance." "Disorderly conduct" was explained as meaning "such conduct as outrages the sense of public decency" and also conduct which "must annoy or interfere with another person." Standard dictionary definitions of "annoy" and "interfere" were also given. In summation, the court stated that "the test, then, of this statute is what people of common intelligence and common sense would understand would be annoyance or interference with another person, which intentionally causes or has an intention to cause inconvenience, annoyance, or alarm, or which recklessly creates a risk of causing inconvenience, annoyance, or alarm to another person." In accordance with an exception taken by the defendant at the conclusion of the charge, the jurors were again instructed that there had to be a "specific intent of causing inconvenience, annoyance, or alarm and not just a general bad intent to do something wrong to somebody."

Although she filed no such request to charge and took no such exception to the charge before the trial court, the defendant now claims error in the failure to instruct the jurors that they could not convict her unless they found that she had uttered "fighting words" to the victim, as that term is used in *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 572. In *State* v. *Evans,* 165 Conn. 61, 70, it was held that a claim raised for the first time on appeal would be con-

person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ."

sidered where the record adequately demonstrates that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial. The claim of the defendant in this case that her first amendment freedoms were violated by the instructions given to the jury would fall within that rule. *Terminiello* v. *Chicago,* 337 U.S. 1, 5.

In *Chaplinsky* v. *New Hampshire,* supra, a statute (p. 569) which forbade addressing "any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place" was upheld as not infringing upon freedom of speech because the state court had construed (p. 573) the broad language of the statute as forbidding no words except those having "a direct tendency to cause acts of violence by the persons to whom, individually, the remark is addressed." " '[F]ighting' words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace"—have never been deemed to fall within the protection of the first amendment. Id., 572; *Cantwell* v. *Connecticut,* 310 U.S. 296, 309. There can be no question that the remarks attributed to the defendant in this case could reasonably have been found to constitute "fighting words." Nevertheless, the defendant may assert her claim of overbreadth if the statute as explained in the charge would have permitted her conviction without a finding by the jury that her utterance had a substantial tendency to provoke violence on the part of the complainant. *Terminiello* v. *Chicago,* supra, 5. "Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient in one of these respects, it may

not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute." *Coates* v. *Cincinnati,* 402 U.S. 611, 619–20.

Despite the evident care with which the charge was framed, we cannot say that it limited the broad language of the statute to prohibit only those expressions having a substantial tendency to provoke violent retaliation or other wrongful conduct. At least where speech in a public place is involved, an instruction that a conviction may be had for conduct which is "so grossly offensive . . . as to amount to a nuisance" or which "outrages the sense of public decency" or which causes "inconvenience, annoyance, or alarm" exceeds the narrow scope of permissible restrictions on freedom of speech. *Plummer* v. *Columbus,* 414 U.S. 2 ("menacing, insulting, slanderous, or profane language"); *Gooding* v. *Wilson,* 405 U.S. 518, 519 ("opprobrious words or abusive language, tending to cause a breach of the peace"); *Coates* v. *Cincinnati,* supra, 611 ("conduct themselves in a manner annoying to persons passing by"); *Terminiello* v. *Chicago,* supra, 5 ("if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest").

The state argues that the infirmity of the statute as construed by the trial court is cured by the requirement in § 53a-182 (a) (2) of a specific intention "to cause inconvenience, annoyance or alarm." Several of the disorderly conduct statutes deemed to have been overbroad in the absence of a "fighting words" limitation have contained similar provisions necessitating proof of intention as an element of the crime. *Acker* v. *Texas,* 430 U.S. 962; *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 571–72, affirming 91 N.H. 310; *Hansen* v. *People,* 190 Colo. 457. That feature has not evoked any judicial comment suggesting that the "fighting words"

restriction may be supplanted by such a provision. If the prohibition of conduct which "annoys or interferes with another person" is overbroad because it reaches constitutionally protected speech, that deficiency would not be remedied by requiring a mental element defined in terms of similar latitude as provided by § 53a-182 (a) (2) ("intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof"). In no significant way does the addition of that element alleviate the inhibiting effect upon freedom of expression, which is the essential rationale of the overbreadth doctrine. *Dombrowski* v. *Pfister*, 380 U.S. 479, 486.

We conclude that the failure of the charge to limit the application of § 53a-182 (a) (2) to "fighting words" in accordance with *Chaplinsky* v. *New Hampshire*, supra, deprived the defendant of a fundamental constitutional right.

## II

The defendant claims that her conviction for harassment in violation of § 53a-183 (a) (3) also infringed upon her constitutional right to freedom of speech. The statute, which she claims is overbroad without some judicial gloss limiting its application to "fighting words," provides in the portion involved that "[a] person is guilty of harassment when: . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." The charge provided the jurors with definitions of the words "harass," "annoy" and "alarm" and instructed them that if they found that the defendant had made a telephone call with the intention to harass, annoy, or alarm, and that the telephone call did harass, annoy, or alarm another person, then the defendant

would be guilty of the offense. No exception was taken with respect to the deficiency in the charge now claimed, but we must, nevertheless, consider the matter to determine whether the record indicates that the defendant has been deprived of a fundamental constitutional right. *State* v. *Evans,* 165 Conn. 61, 70.

As venerated a place as freedom of speech may hold in the constitutional scheme, reasonable regulation of the place and manner of its exercise has been upheld consistently. *Breard* v. *Alexandria,* 341 U.S. 622, 642; *Cox* v. *New Hampshire,* 312 U.S. 569, 574. Where the means of communication involves an intrusion upon privacy, the right of free expression must be balanced against the right to be let alone. *Rowan* v. *Post Office Department,* 397 U.S. 728, 736. A telephone is not a public forum where, in vindication of our liberties, unreceptive listeners need be exposed to the onslaught of repugnant ideas. See *Lehman* v. *Shaker Heights,* 418 U.S. 298, 302–303. The overbreadth principle is not violated by the unrestricted scope of the messages which the statute may ban because it is the manner and means employed to communicate them which is the subject of the prohibition rather than their content. The statute is not flawed because a recital on the telephone of the most sublime prayer with the intention and effect of harassing the listener would fall within its ban as readily as the most scurrilous epithet. The prohibition is against purposeful harassment by means of a device readily susceptible to abuse as a constant trespasser upon our privacy. That words may be the instrument of annoyance does not insulate such wrongful conduct from criminal liability. We conclude that it was not necessary to limit the application of § 53a-183 (a) (3) to "fighting words" as claimed by the defendant.

## III

The only ruling on evidence claimed as error is that the court struck out the testimony of the defendant that she had been acquitted of a criminal charge brought against her previously by the same complainant. The defendant had testified on direct examination that, as the complainant passed by, she had shouted to the defendant that she had once put the defendant in jail. In cross-examining the defendant, the prosecutor, referring to the remark attributed to the complainant, asked whether there had been any prior proceeding and whether the defendant felt that she had been treated fairly in that proceeding by the complainant and her family. After objections the court allowed a question as to whether the defendant felt that the complaint made in that proceeding by the complainant and her family had been fair. She responded negatively. On redirect examination of the defendant, after she testified that she had been acquitted in the prior proceeding, the court ordered her answer to be stricken and instructed the jury to disregard it.

There is some division of authority upon the question of whether a defendant may prove that he was acquitted of a prior crime about which the state has introduced some evidence. Annot., 86 A.L.R.2d 1132, 1144–46; 29 Am. Jur. 2d, Evidence, § 332. In this state in the trial of an escape charge it was held that such evidence was of "such slight and inconsequential relevance that at best it would serve more to divert attention from important evidence than to elucidate vital issues." *State* v. *Blyden,* 165 Conn. 522, 531. In that case, however, it appears that the defendant had been the first to inquire about the other offenses and not the state. We do not regard that case as rejecting the view that the defendant should be entitled to show that he was acquitted of another crime to which the state has first made reference during the trial in order to

help offset the prejudice which the defendant otherwise would suffer. *People* v. *Griffin,* 66 Cal.2d 459, 466; *State* v. *Leahy,* 243 Iowa 959, 967; *Nolan* v. *State,* 213 Md. 298, 310; *State* v. *Smith,* 271 Or. 294, 299; see *State* v. *Segar,* 96 Conn. 428, 442; 4 Wigmore, Evidence (3d Ed.) § 1117 (4).

In the present case it was the defendant who first referred to the other offense in testifying that the complainant had said she once put her in jail. The inquiry of the prosecutor on cross-examination about the prior proceeding was restricted by the court to ascertaining whether the defendant thought that the complaint made in that proceeding was fair. There was no mention of the nature of the offense or the facts relating to it. The mention of "jail" came only from the defendant in her direct testimony and also from one of her witnesses who testified similarly about the remark of the complainant. In our view, the limited reference to the other offense which was made by the state did not materially add to whatever prejudice might possibly have resulted from the previous testimony. It was unnecessary, therefore, to allow the defendant to prove her acquittal as redress for the state's exploitation of an extraneous issue, and the ruling of the trial court, which avoided any further reference to the matter, was a proper exercise of discretion.

There was no error in the conviction of the defendant for harassment in violation of § 53a-183 (a) (3) under the first count of the information; there was error in the conviction of the defendant for disorderly conduct in violation of § 53a-182 (a) (2) under the second count of the information, the judgment is set aside, and that count of the information is remanded for a new trial.

In this opinion PARSKEY and A. ARMENTANO, Js., concurred.