**Francelle DORMAN**

**v.**

**C. Robert SATTI, State's Attorney, Judicial District of New London, in his Official Capacity; and Lester J. Forst, Commissioner of Public Safety, State of Connecticut, in his Official Capacity.**

**Civ. No. H–86–898(AHN).**

United States District Court,
D. Connecticut.

Feb. 1, 1988.

Kathleen Eldergill, Beck & Eldergill, Manchester, Conn., for plaintiff.

James Clark, Harry Weller, Carl Schuman, Asst. State's Attys., Wallingford, Conn., L.D. McCallum, Asst. State's Atty., Hartford, Conn., for defendants.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

This case requires the court to consider the constitutionality of Connecticut's newly-enacted Hunter Harassment Act, Conn. Gen.Stat. Section 53a–183a, which penalizes those who interfere with or harass persons engaged in the "lawful taking of wildlife." The plaintiff was arrested under the Act after she had approached several hunters taking waterfowl in state marshlands near her home and verbally attempted to dissuade them from their hunt. Although the charge against her was subsequently dismissed, she brought this action pursuant to 42 U.S.C. Section 1983 in order to adjudicate the Act's constitutionality. On cross motions for summary judgment, for the reasons set forth below, the court finds

that the Act as written is unconstitutionally vague and overbroad.

## Background

### A. The Act

An Act concerning Harassment of Hunters, Trappers or Fishermen ("Hunter Harassment Act" or "the Act"), which became part of Connecticut's penal code by legislative enactment in 1985, provides that:

No person shall: (1) Interfere with the lawful taking of wildlife by another person, or acts in preparation for such taking, with intent to prevent such taking; or (2) harass another person who is engaged in the lawful taking of wildlife or acts in preparation for such taking.

Conn.Gen.Stat. Section 53a–183a. It is a class C misdemeanor, subjecting an offender to a fine and/or imprisonment for up to three months. Conn.Gen.Stat. Sections 53a–28 and 53a–36(3).

The Hunter Harassment Act is Connecticut's version of legislation that has been enacted in nearly half the states for the purpose of protecting lawful hunters from intentional interference by those who would disturb their hunt.[1] In adopting the Act the legislature clearly intended to provide an effective deterrent against persons who actively oppose hunting.[2] The Senate voted down a proposed amendment aimed at eliminating the harassment subsection as "vague" and reducing the Act's "very severe penalty" to an infraction carrying a fine of up to $99. 28 S. Proc., Pt. 10, 1985 Sess., pp. 3325–34. A spokesman for the bill explained to his colleagues that examples of hunter "harassment" would include "intentionally blaring a radio when someone intended to go out and pursue game," giving "verbal abuse to someone who was preparing to go out into some public property perhaps to take game," and "spreading human hair around the facility [so that] game would be deterred." Id., p. 3327 (Sen. Benson).

### B. The Arrest

The plaintiff, Francelle Dorman, lived near a state forest containing marshland inhabited by a variety of waterfowl. By her own admission, Ms. Dorman is "moral-

---

**1.** Other states' corresponding statutes, most of which were enacted within the past five years, include: Ariz.Rev.Stat.Ann. Section 17–316 (1984); Del.Code Ann. tit. 7, Section 731 (Supp. 1986); Ga.Code Ann. Sections 27–3–150 to –152 (1986); Idaho Code Section 36–1510 (Supp. 1987); Ill.Ann.Stat. ch. 61, paras. 301–304 (Smith–Hurd Supp.1987); La.Rev.Stat.Ann. Sections 56:648.1 to .3 (West 1987); Me.Rev.Stat. Ann. tit. 12, Sections 7541–7542 (Supp.1987); Md.Nat.Res.Code Ann. Section 10–422 (Supp. 1987); Mont.Code Ann. Sections 87–3–141 to –144 (1987); Nev.Rev.Stat. Section 503.015 (1985); N.Y.Envtl.Conserv.Law Section 11–0110 (McKinney Supp.1988); N.D.Cent.Code Section 20.1–01–31 (Supp.1987); R.I.Gen.Laws Section 20–13–16 (Supp.1987); S.D. Codified Laws Ann. Sections 41–1–8 to –10 (1985); Tex. Parks & Wild. Code Ann. Section 62.0125 (Vernon Supp. 1988); Utah Code Ann. Section 23–20–29 (Supp. 1987); Vt.Stat.Ann. tit. 10, Section 4708 (1984); W.Va Code Section 20–2–2a (Supp.1987). Such legislation is vigorously supported by the National Rifle Association. See National Rifle Association of America, Institute for Legislative Action, 1986 NRA–ILA State Legislative Issue Brief: Hunter Harassment Legislation.

Pennsylvania's statute penalizing harassment of *wildlife* with the intent to disturb lawful taking, Pa.Stat.Ann. tit. 34, Section 1311.732 (Purdon Supp.1987), was repealed in mid–1987 and replaced with a law prohibiting any harassment of wildlife, regardless of intent, except in the course of a lawful hunt. 34 Pa.Cons.Stat. Section 2162 (1987).

None of these other statutes contains the specific language at issue in this challenge to Connecticut's Act. The Connecticut statute is also unique in being part of the penal code; some of the other states' statutes impose civil fines and/or injunctions, some impose criminal fines and/or imprisonment ranging from 10 days to a year, and some impose both types of penalties— but all are located among the statutes governing wildlife, parks or conservation.

**2.** One of the bill's supporters stated during floor debate that "we need to have some sort of deterrent.... [T]here have been some instances where hunters' lives have been threatened by individuals clearly because of the emotional type of objection that there is to ... taking of animals' lives." 28 S.Proc., Pt. 10, 1985 Sess., pp. 3328–29 (Sen. Benson). Another argued that "hunters are picked on often.... [They] should have the right to hunt in lands that are made available to them." Id., p. 3332 (Sen. Eaton). And a third noted that "the people who are involved in this business of harassment are very apparent in their harassment ... and they do it [purposely and] habitually and repeatedly." Id., pp. 330–31 (Sen. Gunther).

ly opposed to the hunting and senseless killing of harmless and defenseless animals, including all waterfowl." Affidavit of Francelle Dorman, filed December 30, 1986, at para. 2.

On January 30, 1986, during the goose-hunting season, Ms. Dorman approached several hunters in the marsh with the intention of convincing them to abandon their plans to hunt. Complaint, filed Aug. 21, 1986, at para. 10. To that end, as she describes it, she "walked with the hunters, ... [and] spoke to them about the violence and cruelty of hunting, of the beauty of the waterfowl and of their right to live peacefully and without harm." *Id.* at para. 11. The hunters, in contrast, regarded her behavior as "antics" that were in "rude and blatant disregard of [their] rights [to] precious recreational time" and "to pursue [their] enjoyment of hunting." Letter from Roger Horley to Mr. Hauser (Feb. 24, 1986), *attached as* Exhibit B to Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed Dec. 8, 1986. They advised Ms. Dorman that her actions were unlawful and, when she refused to leave, they summoned a state law enforcement officer who arrested her for violating the Hunter Harassment Act.

In a pretrial appearance in state court, the prosecutor conceded that the arrest had been premature because Ms. Dorman had only been "talking about what she was going to do to interfere with hunting geese." Transcript at 2 (April 22, 1986), *State v. Dorman*, No. CR–10–151085. At the prosecutor's request, the court dismissed the charge against Ms. Dorman for lack of probable cause.

C. *The Lawsuit*

On August 21, 1986, Ms. Dorman filed this action in federal court against C. Robert Satti, chief prosecutor for the New London Judicial District, and Lester J. Forst, Commissioner of Public Safety for the State of Connecticut, who are responsible for enforcing the laws of Connecticut and prosecuting violations thereof.[3] The plaintiff grounds her suit in 42 U.S.C. Section 1983, alleging that her arrest violated her rights under the first, fourth and fourteenth amendments; she seeks a declaratory judgment that the Hunter Harassment Act is unconstitutional on its face and as applied, and further seeks to have the court enjoin the defendants from enforcing and prosecuting under the Act.

On November 19, 1986, the defendants moved the court to dismiss on grounds that there existed no case or controversy, that the court lacked jurisdiction over the suit, and that the action failed to state a claim on which relief could be granted. After hearing oral argument on April 9, 1987, the court denied the motion.

The plaintiff has now moved for summary judgment pursuant to Rule 56, Fed.R. Civ.P., arguing that there exists no genuine issue of material fact and that, because the Act is unconstitutionally vague and overbroad, she is entitled to a judgment as a matter of law. The defendants have filed cross-motions for summary judgment, asserting the constitutionality of the Act. The court heard oral argument on September 23, 1987.

*Summary Judgment*

■ Summary judgment is viewed in this circuit as an effective and correct method of avoiding protracted trials where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Meiri v. Deacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). *See* Rule 56(c), Fed.R.Civ.P. The Supreme Court has come to look with favor on the device, stating that summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every ac-

---

**3.** In a second count, against the state trooper who arrested her, Ms. Dorman claimed damages arising from her wrongful arrest. On November 20, 1987, that defendant and the plaintiff filed a stipulation for dismissal with prejudice as to that count, which was approved by the court on December 1, 1987.

tion.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Rule 1, Fed.R.Civ.P.). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2506, 91 L.Ed.2d 202 (1986). If the pleadings, depositions, and interrogatories, together with any affidavits, show that there is no genuine issue as to any material fact, then summary judgment shall be granted to the moving party if he is entitled to it as a matter of law. Cross motions for summary judgment, absent more, do not make the court more ready or likely to grant summary judgment. *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975); *American Manufacturers Mutual Insurance Co. v. American Broadcasting–Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967).

▮▮▮ Where a law is challenged as facially inconsistent with the first amendment because it impinges upon constitutionally protected activities, a summary judgment motion is particularly appropriate because the claim turns on a legal, not a factual, question. *Holy Spirit Association for Unification of World Christ v. Hodge,* 582 F.Supp. 592, 595 (N.D.Tex.1984). *See also Invisible Empire Knights of KKK v. City of West Haven,* 600 F.Supp. 1427, 1430 (D.Conn.1985). Because the parties here are in complete accord as to the facts, and their sole dispute is whether the Hunter Harassment Act is constitutional, the summary judgment motions now before the court are an eminently suitable vehicle for examining and determining the ultimate viability of the plaintiff's case.

## Discussion

The plaintiff asserts that the Hunter Harassment Act is facially—that is, wholly

—invalid because it is unconstitutionally overbroad and vague.[4] She grounds her argument in the premise that the statute so implicates free expression as to trigger both first amendment overbreadth analysis and the concomitant stringent review for vagueness. The defendants' position is that the plaintiff's analysis is inapposite because the Act regulates conduct, not speech. They argue that the Act is valid under the vagueness and overbreadth standards applicable to content-neutral statutes; that is, that it is reasonable regulation necessary to further substantial state interests.[5] They contend that, in effect, it is "nothing more than a reasonable time, place and manner restriction on certain conduct and incidental speech." Memorandum of Defendant C. Robert Satti in Support of His Cross Motion for Summary Judgment and in Opposition to the Plaintiff's Motion for Summary Judgment, filed June 14, 1987, at 15 ("Defendant's Memorandum").

### A. *Vagueness and Overbreadth Review*

"[I]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). As a threshold matter, then, the court must determine whether the Hunter Harassment Act implicates the communicative aspect of the conduct it proscribes. If it does not, the Act will be regarded as content-neutral and the overbreadth challenge must fail. *Id.* Furthermore, where conduct and not merely speech is involved, the Act's overbreadth "must not only be real, but sub-

---

4. Although she also alleges in her complaint that it is unconstitutionally vague as applied to her, she has not substantially argued that claim.

5. The authority to regulate the hunt is one of the state's ancient police powers, and is uncontested here. The general rule is that every person has the right to take game wherever and whenever he has a right to do so, subject to statutory regulations and so long as he does not infringe on the rights of others. The common law provides a remedy on trespass against any-

one "interfering with another's right of hunting or taking game ... if he does anything for the express purpose of destroying that right." 38 C.J.S. Game Section 6 (1943). It is equally well established, however, that such regulation and remedy must come within constitutional limitations. *Id.* at Section 8. Connecticut's extensive regulations of fish and game—and their taking—are located at Title 26 of the Connecticut General Statutes.

stantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973).

A vagueness analysis is somewhat, though not wholly,[6] different. To survive a "void for vagueness" attack, the Act must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly," and "must provide explicit standards" so as to ensure it is not arbitrarily and discriminatorily enforced. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–98, 33 L.Ed.2d 222 (1972). *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). "The issue thus is whether a person of 'common intelligence' would 'necessarily' wonder if his contemplated conduct were illegal." *United States v. Lambert*, 446 F.Supp. 890, 896 (D.Conn.1978) (Daly, J.); *aff'd sub nom, United States v. Girard*, 601 F.2d 69 (2d Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). An enactment may be unambiguous in the sense that its terms are plain, but may nevertheless be vague in that it fails to provide a "reasonably ascertainable standard of guilt." *Herndon v. Lowry*, 301 U.S. 242, 264, 57 S.Ct. 732, 742, 81 L.Ed. 1066 (1932). Furthermore, when a penal statute's "literal scope, unaided by a narrowing state court interpretation," could reach such a fundamental right as freedom of speech sheltered by the first amendment, the void-for-vagueness doctrine "demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974).

█ It is not the proper function of the federal courts independently to construe a state statute so as to eliminate its vagueness or overbreadth. *Gooding v. Wilson*, 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972); *Gormley v. Director, Connecticut State Department of Probation*, 632 F.2d 938, 942 n. 5 (2d Cir.), *cert. denied*, 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485 (1980). The validity of the Hunter Harassment Act has not been litigated in the Connecticut courts. However, this court may look for well established state judicial interpretation of other statutes that may clarify this Act and effectively remove uncertainties which the statutory language may have created. *Hamling v. United States*, 418 U.S. 87, 113, 94 S.Ct. 2887, 2905, 41 L.Ed.2d 590 (1974); *State v. Tyson*, 195 Conn. 326, 332, 487 A.2d 1091, 1095 (1985); *State v. Pickering*, 180 Conn. 54, 62–64, 428 A.2d 322, 327 (1980) (looking for the "extensive judicial gloss" on the statutory terms at issue).

The plaintiff argues that the Act could be read to prohibit "either speech or conduct which occurs in the presence of a hunter, trapper or fisherman if [he] subjectively believes that he has been annoyed or

---

**6.** In approaching a combined overbreadth-vagueness claim, it is helpful to remember that:

In many cases, the doctrines of vagueness and overbreadth are distinguishable. The former, originally a due process doctrine, applies when the statutory language is unclear, and is concerned with notice to the potential wrongdoer and prevention of arbitrary or discriminatory enforcement. The doctrine of overbreadth, in contrast, is exclusively a First Amendment product, and usually applies when the statutory language is clear, but encompasses activities in which people have a right to engage without interference. However, in a suit challenging an ambiguously worded statute for infringing upon First Amendment rights, the doctrines blend. The same evils are addressed, i.e., application of the statute's sanctions to protected activity and deterrence of others from engaging in similar conduct, and the same remedies are available, i.e., a narrowing interpretation or facial invalidation. As a result, some courts have made no attempt to distinguish the two doctrines when measuring a statute against the requirements of the First Amendment. *See, e.g., Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 ... (1972); *Cox v. Louisiana*, 379 U.S. 536, 551, 85 S.Ct. 453, 462, 13 L.Ed.2d 471 ... (1965) (statute held "unconstitutionally vague in its overly broad scope").

*United States v. Lambert*, 446 F.Supp. 890, 897 (D.Conn.1978) (Daly, J.), *aff'd sub nom, United States v. Girard*, 601 F.2d 69 (2d Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). *See also Keyishian v. Board of Regents*, 385 U.S. 589, 609, 87 S.Ct. 675, 687, 17 L.Ed.2d 629 (1967); *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120–21, 14 L.Ed.2d 22 (1965); *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963).

his purposes opposed." Memorandum in Support of [Plaintiff's] Motion for Summary Judgment, filed April 20, 1987, at 7. Her interpretation arises from the fact that the Act fails to specify what conduct constitutes interference or harassment. Furthermore, that fact must be considered in context of the clause by which the Act protects "acts in preparation for" the lawful taking of wildlife, without limiting the effect of that clause to any time, place or circumstance. As such, she concludes, the Act impermissibly penalizes merely offensive or annoying speech uttered in a public place not properly subject to government regulation.

## B. Interference and Harassment

■ As the Supreme Court recently reaffirmed, acts such as interference and harassment plainly encompass verbal as well as physical conduct, unless otherwise defined.[7] *City of Houston v. Hill,* — U.S. —, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (rejecting as overbroad an ordinance making it unlawful to "in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest").

"Interference" offenses generally describe the prohibited conduct in concrete terms that are statutorily defined, often altogether avoiding the word "interfere."[8] Apart from the Hunter Harassment Act, Connecticut has criminalized two forms of interference. First is the disorderly conduct statute, Conn.Gen.Stat. Section 53a–182(a)(2) (class C misdemeanor), which penalizes one who intentionally, "by offensive or disorderly conduct, annoys or interferes with another person". Although Connecticut's highest court has not ruled on the matter, a state trial court once upheld the disorderly conduct statute in the face of constitutional challenges for vagueness and overbreadth—but did so without discus-

sion. *State v. Anonymous,* 6 Conn.Cir.Ct. 402, 404–08, 275 A.2d 620, 622–23 (1971) (upholding Conn.Gen.Stat. Section 53a–175, the immediate and virtually identical precursor to Section 53a–182(a)(2)). Second is the offense of interfering with an officer, Conn.Gen.Stat. Section 53a–167a (class A misdemeanor), which penalizes one who "obstructs, resists, hinders or endangers" a peace officer or firefighter in the performance of his or her duties. The Connecticut Supreme Court recently considered and rejected vagueness and overbreadth challenges to Section 53a–167a, in *State v. Williams,* 205 Conn. 456, 469–74, 534 A.2d 230, 237–39 (1987).

The *Williams* court held that Section 53a–167a contains two "facially reasonable constraints" that comport with the constitutional requirements of fair notice: it explicitly defines the conduct that constitutes interference, and it expressly limits its effect to action intended to obstruct the officers in performance of their duties. *Id.* at 471, 534 A.2d at 238. The court noted that the fact that the statute covers acts of verbal resistance "does not, per se, leave [it] so open-ended that it lends itself to arbitrary enforcement," and went on to construe the statute to not apply to "situations in which a defendant merely questions a police officer's authority or protests his or her action." *Id.* at 471–74, 534 A.2d at 238. Finally, the court distinguished Section 53a–167a from the ordinance struck down in *Houston v. Hill* by finding that the Connecticut statute did not contain such a "broad sweep" of language, and that unlike the ordinance it had not "been applied in many instances to persons who were doing nothing more than talking or arguing with the police." *Id.* at 472, 534 A.2d at 239.

The lesson of *Williams* does not apply to the Hunter Harassment Act. First, because the Act fails to define the nature of

---

7. The Supreme Court has never articulated a basis for distinguishing between speech and conduct, perhaps because, as Professor Tribe has pointed out, virtually all communication involves conduct and much conduct is expressive. L. Tribe. *American Constitutional Law* 599–600 (1978).

8. *See, e.g.,* Conn.Gen.Stat. Section 53a–165 (defining hindering prosecution and other forms of obstruction of justice; no mention of "interference"). *See also Annotation, What Constitutes obstructing or Resisting an Officer, In the Absence of Actual Force,* 44 ALR3d 1018 (1972).

the interference it proscribes, its language implicitly sweeps as broadly as that of the *Houston* ordinance, and it thus cannot be saved by a limiting construction as was Section 53a–167a. Second, in failing—by virtue of its "acts in preparation" clause—to limit the proscribed interference as to time and place, the Act carries its effect far beyond the proper scope of government regulation.

Nor does this court find guidance in state court pronouncements on the validity of Connecticut's telephone harassment statute, Conn.Gen.Stat. Section 53a–183(a)(3),[9] because unlike the Hunter Harassment Act it is explicitly content-neutral ("whether or not a conversation ensues"). *State v. Anonymous (1978–4)*, 34 Conn.Supp. 689, 694–98, 389 A.2d 1270, 1273–74 (Conn.Super.Ct.App.Sess.1978) (statute not overbroad because it is directed to "the manner and means employed to communicate [the unwanted messages] ... rather than their content"), *cert. denied*, 174 Conn. 803, 382 A.2d 1332 (1978). The statute was also considered in a series of federal court rulings arising out of the incident litigated in *State v. Anonymous (1978–4)*. *Gormley v. Director, Connecticut State Department of Probation*, 632 F.2d 938, 941–43 (2d Cir.1980) (unlike numerous other telephone harassment statutes,[10] "[c]learly the Connecticut statute regulates *conduct*, not mere speech"), *aff'g* Civil No. H–78–264

(D.Conn.1979) (Blumenfeld, J.) (ruling denying petition for writ of habeas corpus), *cert. denied*, 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485 (1980). Examining Section 53a–183(a)(3) under the overbreadth analysis accorded to statutes that penalize noncommunicative conduct, the federal appeals court concluded that its "possible chilling effect on free speech ... [is] minor compared with the all-too-prevalent and widespread misuse of the telephone to hurt others."[11] 632 F.2d at 942 (also noting that harassing telephone calls are "an unwarranted invasion of privacy," that they appeared to be on the increase, and that they are properly outlawed by federal and state statutes). In addition, as the Connecticut appeals court had earlier observed, "[a] telephone is not a public forum," but rather "a device readily susceptible to abuse as a constant trespasser upon our privacy." 34 Conn.Supp. at 694–98, 389 A.2d at 1273–74. The statute is therefore no analogue to the Hunter Harassment Act. It is also important to point out that Section 53a–183(a)(3) defines with considerable precision and in objective terms the specific conduct which constitutes "harassment," stating that it is effective "whether or not a conversation ensues." The Hunter Harassment Act provides no such clarifying definition.[12]

In arguing that the Act is content-neutral, the defendants note that the Act is

---

**9.** Conn.Gen.Stat. Section 53a–183(a)(3) provides that:

> (a) A person is guilty of harassment when
>
> .    .    .    .    .
>
> (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm.

**10.** *See generally, Annotation, Validity, Construction, and Application of State Criminal Statute Forbidding Use of Telephone to Annoy or Harass,* 95 A.L.R.3d 411 (1979 & Supplement Aug. 1987).

**11.** Interestingly, in dissenting to the Supreme Court's denial of certification, Justice White wrote that while a state has a valid interest in protecting its citizens' privacy, "it is equally clear that [it] may not pursue these interests by unduly infringing on what would otherwise be protected speech." *Gormley v. Director, Connecticut State Department of Adult Probation,* 449 U.S. 1023 (1980) (White, J., dissenting). He

reasoned that, because "speech may be 'annoying' without losing its First Amendment protection," the statute might well be "substantially overbroad and hence unconstitutional." *Id.* at 1024.

Moreover, at least one other state's high court has found statutory language very similar to Section 53a–183(a)(3) to be unconstitutionally overbroad. *People v. Klick,* 66 Ill.2d 269, 5 Ill.Dec. 858, 362 N.E.2d 369 (1977).

**12.** Indeed, because the telephone harassment statute immediately precedes the Hunter Harassment Act, and because the former carefully defines "harassment" while the latter only proscribes harassment directed at hunters, it would not be unreasonable to construe the scope of the second by reference to the first. Of course, it would be patently absurd to do so, as such a reading would limit the Act to telephone harassment of hunters; however, the close juxtaposition of the two enactments can only foster confusion as to the newer one.

silent as to the method or opinion of those whose conduct it proscribes. Defendant's Memorandum at 5 n. 4. However, to be proscribed under the Act, conduct must have the objective of preventing hunting. It is as easy to accomplish that objective indirectly by verbally dissuading the hunter as directly by physical means. As such, the Act clearly encompasses communicative content. *See State v. Cavallo,* 200 Conn. 664, 670–71, 513 A.2d 646, 650 (1986) (penal statute aimed at conduct that *induces* a certain result implicates "a communicative form of conduct" and may therefore be examined for its facial validity).

C. *"Acts In Preparation"*

■ Having determined that the conduct the Act proscribes includes communication, it is necessary to find whether that communication is entitled to a first amendment shield. The Act prohibits interference and harassment directed to "lawful taking" and to "acts in preparation for" lawful taking. "Lawful taking" clearly limits the protection to acts in times, places and circumstances identified by state fish and game laws and regulations, but "acts in preparation" are not defined or delimited. Thus, the "acts in preparation" clause can be reasonably read to encompass buying supplies long before the actual hunt takes place, which could not only include the purchase of weapons and ammunition, but could also include the purchase of food and clothing to be used on a hunting trip; consulting a road map on a public road; making plans during a workplace coffee break; or even getting a good night's sleep before embarking on a hunting trip. Conduct that intentionally interferes with those acts, or harassment of anyone undertaking them, is clearly subject to the Act as it is now framed.

In this aspect, the Act is strikingly different from those hunter harassment statutes enacted in other states that extend the legislation's scope beyond actual "lawful taking"; in those cases the statutes' broadened effect is expressly limited to "travel, camping, and other acts preparatory to taking, *which occur on lands or waters upon which the affected person has the right or*

*privilege to take such wildlife."* Ill.Ann. Stat. ch. 61, para. 301, section 1.b. (Smith–Hurd Supp.1987) (emphasis added); N.Y. Envtl.Conserv.Law Section 11–0110.1 (McKinney Supp.1988) (emphasis added). *See also* Texas Parks & Wild. Code Ann. Section 62.0125(b)(2) (Vernon Supp.1988). While the Connecticut legislature is certainly not bound to adopt such alternative formulations, they do demonstrate that there exists the option of circumscribing the preparatory acts that the state may legitimately protect.

The state has a legitimate and substantial interest in managing and regulating the public lands designated for the preservation, enjoyment or taking of wildlife; the wildlife itself; and the activities of persons on those lands, including hunters. So long as the legislature elects to permit hunters to pursue their activity on property, during times, and under circumstances set aside for that purpose, it also may regulate the conduct of nonhunters in those contexts. Considerations of safety, alone, would justify such regulation, even it if impinges incidentally upon protected speech. On the other hand, the propriety of hunting and taking wildlife is a fair subject for spirited public debate. Once the hunter is outside the scope of his "lawful hunt" he is no different from any other unreceptive listener who must, "in vindication of our liberties," be "exposed to the onslaught of repugnant ideas." *State v. Anonymous (1978–4),* 34 Conn.Supp. at 696, 389 A.2d at 1273. *See also Lehman v. City of Shaker Heights,* 418 U.S. 298, 302–03, 94 S.Ct. 2714, 2716–17, 41 L.Ed.2d 770 (1974). Because the Act extends its proscription to protected speech in forums not properly subject to state regulation, it is "unconstitutionally vague in its overly broad scope." *Cox v. Louisiana,* 379 U.S. 536, 551, 85 S.Ct. 453, 462, 13 L.Ed.2d 471 (1965).

■ In conclusion, the Act as written "criminalizes a substantial amount of constitutionally protected speech." *Houston v. Hill,* —— U.S. at ——, 107 S.Ct. at 2512. To the extent that the "acts in preparation" clause sweeps beyond the legitimate scope of the state's regulatory power over hunt-

ing and taking of wildlife, the Act is unenforceably vague in its overly broad scope. And to the extent that the prohibited harassment and interference governed by that clause include protected speech, the Act is unconstitutionally overbroad. The state is well within its power in protecting the legitimate rights of lawful hunters from harassing conduct, and "such conduct might constitutionally be punished under a properly tailored statute." *Id.* at —— n. 11, 107 S.Ct. at 2510 n. 11. But this Hunter Harassment Act is not such a statute.

### Abstention

When a federal court litigant in a Section 1983 action contests the constitutionality of a state law that is unclear and susceptible of a state court determination that may avoid or modify the constitutional question, the federal court may abstain from the matter until the state's highest court resolves the state law issue. *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Harrison v. N.A.A.C.P.,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). The validity of the Hunter Harassment Act has not been litigated in Connecticut's state courts. Although neither party has urged abstention, this court has the right, and perhaps the obligation, to *sua sponte* consider as a preliminary matter whether abstention is proper—and the court has carefully done so. *See Bellotti v. Baird,* 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976).

*Pullman* abstention is a narrowly limited doctrine. *See Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2326–27, 81 L.Ed.2d 186 (1984) (abstention inapplicable where statute, while unclear, is not susceptible of interpretation that will modify or avoid the constitutional question); *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 306, 99 S.Ct. 2301, 2312–13, 60 L.Ed.2d 895 (1979) (not proper to abstain where statute is unambiguous); *Naprstek v. City of Norwich,* 545 F.2d 815, 818 (2d Cir.1976) (abstention inappropriate where state courts would be powerless to remedy statute's deficiency because to do so requires a legislative enactment).

As has been explained above, the court finds the Hunter Harassment Act to be unambiguous, notwithstanding its unconstitutional vagueness. Furthermore, the Act is not susceptible to curative construction. Consequently, abstention is not required. *City of Houston v. Hill,* —— U.S. at ——, 107 S.Ct. at 2512–14; *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216–17 & n. 15, 95 S.Ct. 2268, 2276 & n. 15, 45 L.Ed.2d 125 (1975) (to reach an acceptable narrowing limitation, statute would have to be rewritten). *Cf. diLeo v. Greenfield,* 541 F.2d 949, 955 (2d Cir.1976) (Newman, J., dissenting).

### Conclusion

For all the aforementioned reasons, the Defendants' Motion for Summary Judgment is denied; the Plaintiff's Motion for Summary Judgment is granted and judgment shall enter on her behalf.

---

**Editor's Note:** The opinion of the United States District Court, N.D. New York in *Turi v. Chromalloy American Corporation,* published in the advance sheet at this citation, 678 F.Supp. 384–389, was withdrawn from the bound volume at request of the court.

---

**Editor's Note:** The opinion of the United States District Court, N.D. New York in *New York State Teamsters Conference Pension and Retirement Fund v. Kerr Motor Lines,* published in the advance sheet at this citation, 678 F.Supp. 390–396, was withdrawn from the bound volume at request of the court.