UNITED STATES of America

v.

Ignacio Edmundo SANCHEZ VAZQUEZ, Alejandro Valentin de Maria Campos y Vazquez, and Frederico Javier de Maria Campos y Vazquez.

Crim. A. No. CR83–291A.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 13, 1984.

Wilmer Parker, III, Asst. U.S. Atty., Atlanta, Ga., for plaintiff.

John R. Martin, Atlanta, Ga., for defendants.

## ORDER OF COURT

HORACE T. WARD, District Judge.

The defendants were arrested on November 9, 1983, and accused via a criminal complaint of participating in a money laundering scheme. They are charged in a ten-count indictment with violations of Title 18 U.S.C. § 371, Title 18 U.S.C. § 1001, Title 31 U.S.C. § 5322, and Title 18 U.S.C. § 1952.

This matter is currently before the court on the Magistrate's Report and Recommendation, and defendants' objections thereto, concerning: 1) the defendants' joint motion to dismiss various counts for failure to state a crime or to inform the defendants of the charges against them; 2) defendants' joint motion to dismiss on the grounds of unconstitutionality; and 3) defendants' joint motion to suppress.

## I. DEFENDANTS' MOTION TO DISMISS VARIOUS COUNTS FOR FAILURE TO STATE A CRIME OR TO INFORM THE DEFENDANTS OF THE CHARGES AGAINST THEM

Count 1 charges the defendants with conspiring in violation of 18 U.S.C. § 371, to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the United States Treasury Department and its agencies in the collection of Currency Transaction Reports (hereinafter "CTR's"), which reports are required, by Title 31 United States Code, and Title 31 Code of Federal Regulations, parts 103 and 104, to be filed by certain financial institutions; Counts 2 through 5 accuse them of unlawfully, knowingly and willfully concealing and causing to be concealed by a trick, scheme and device a material fact within the jurisdiction of the Treasury Department in violation of 18 U.S.C. §§ 1001 and 1002; Counts 6 through 9 accuse them of willfully and knowingly causing certain enumerated financial institutions to fail to file required CTR's with the Internal Revenue Service in violation of 31 U.S.C. § 5322 and 18 U.S.C. § 2; and Count 10 accuses them of knowingly and willfully traveling in interstate and foreign commerce commencing from Miami, Florida to Atlanta, Georgia with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment or carrying on of an unlawful activity—the "laundering" of monies derived from the sale of narcotic substances, in violation of 18 U.S.C. § 1952.

### A. Definition of "Financial Institution"

Defendants contend that Counts 2 through 9 should be dismissed because no crime is stated under 31 U.S.C. § 5322 or 18 U.S.C. §§ 1001–1002. Specifically, defendants argue that they can only be held liable under these statutes on a theory of vicarious liability if they purchased more than $10,000 of cashier's checks on the same day from the same financial institution and used some trick or device to know-

ingly cause the financial institution not to file a CTR it was otherwise under a duty to file. Defendants contend that they are not criminally liable because each branch of a bank at which a transaction was conducted constitutes a separate financial institution as defined by 31 C.F.R., Part 103. Therefore, no financial institution was under a duty to file reports as contemplated by 31 U.S.C. § 5313 and 31 C.F.R., Part 103, because each transaction at a branch of a bank was less than $10,000.

The Magistrate found defendants' argument to be without merit. The court agrees. The question presented is what constitutes a financial institution under the statute and regulations.

Title 31 U.S.C. § 5313(a) provides that a CTR must be filed by a domestic financial institution when that institution is involved in a cash transaction "in an amount and denomination, or under circumstances the Secretary prescribes by regulation." The definition of a financial institution under the statute includes a bank. 31 U.S.C. § 5312(a)(2). Furthermore, the regulations promulgated by the Secretary, 31 C.F.R. § 103.22(a), provide in pertinent part, that "each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000." The term "financial institution" is defined in these regulations as "each agency, branch or office within the United States of any person doing business in one or more of the capacities listed below: (1) a bank (except bank credit systems) ...." 31 C.F.R. § 103.11.

Defendants argue that the unambiguous language of the regulations means that each branch of a bank is a separate financial institution, and that these regulations, instead of the statute, govern when a CTR must be filed.

While the regulations do govern when a CTR must be filed, the court disagrees with defendants' interpretation of the term "financial institution." The court believes that the statute, 31 U.S.C. § 5312 and the regulations, 31 C.F.R. § 103.11, must be read together in determining the meaning of the term "financial institution."

The court determines that the correct interpretation of the implementing regulations in defining the term "financial institution" is a bank, including each of its branches. Thus, if the financial institution (i.e., the bank, or in particular, any of its branches) is aware of a cash transaction in excess of $10,000 on a particular day, the bank or its particular branch must file a CTR. Likewise, if there are multiple cash transactions at different branches of the same financial institution (i.e., bank) which exceed $10,000, then that particular bank must file a CTR. This interpretation is supported by the supplemental instructions for completing Form 4789 Currency Transaction Report, issued by the Department of Treasury, which states:

> If a financial institution is aware that an individual or organization has conducted a series of currency transactions in one day at the financial institution, or at different branch offices of the financial institution, totaling more than ten thousand ($10,000.00) dollars, a report should be filed for all such transactions ....

For the foregoing reasons, the court concludes that the indictment does arguably state a crime pursuant to *United States v. Tobon-Builes,* 706 F.2d 1092 (11th Cir.1983), and defendants' motion to dismiss Counts 2 through 9 is DENIED.

B. Travel Act

With respect to Count 10 of the indictment which charges a violation of 18 U.S.C. § 1952, defendants contend that this count should be dismissed because: 1) the laundering of money from the sale of narcotic substances is not an unlawful activity within the statute; 2) there is no allegation of a continuous course of conduct; 3) the defendants were not alleged to be members of an illegal activity; and 4) the defendants are not alleged to perform any of the acts specified in § 1952 after traveling with the required intent.

The Magistrate found all of defendants' arguments to be without merit. Upon due consideration of all four grounds, the court finds that only ground 4 has any merit.

Defendants specifically contend that Count 10 fails to set out the essential elements in the statute that the defendants performed or attempted to perform some act specified in § 1952 after traveling in interstate commerce with the intent to promote an unlawful activity as defined in the statute.

■ Where it is alleged that the indictment is defective, the question presented is whether such deficiency is technical or whether there is a "deprivation of a significant protection of the indictment process." *United States v. Wander,* 601 F.2d 1251, 1258 (3rd Cir.1979). It is well settled that in determining the sufficiency of an indictment the court must consider: 1) whether the indictment contains the essential elements of the offense intended to be charged and sufficiently appraises the defendant of what he must be prepared to meet, and 2) whether it is specific enough to make a plea of double jeopardy possible. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). *See also United States v. Mouton,* 657 F.2d 736 (5th Cir.1981).

■ 18 U.S.C. § 1952 provides in pertinent part:

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

Thus, the three essential elements which must be alleged in the indictment are: 1) interstate travel or use of an interstate facility; 2) with intent to promote an unlawful activity; and 3) a subsequent overt act in furtherance of the unlawful activity. *United States v. Tavelman,* 650 F.2d 1133, 1138 (9th Cir.1981); *United States v. Wander, supra,* at 1258; *United States v. Polizzi,* 500 F.2d 856, 897 (9th Cir.), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975).

■ In the instant case, Count 10 of the indictment reads as follows:

That on or about November 6, 1983 and continuing into November 7, 1983, in the Northern Judicial District of Georgia, and other judicial districts,

IGNACIO EDMUNDO SANCHEZ VAZQUEZ ALEJANDRO VALENTIN de MARIA CAMPOS y VAZQUEZ FREDERICO JAVIER de MARIA CAMPOS y VAZQUEZ

defendants herein, did knowingly and willfully travel in interstate and foreign commerce with the intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment or carrying on of an unlawful activity; to wit, the "laundering" of monies derived from the sales of narcotic substances by traveling with said monies from Miami, Florida to Atlanta, Georgia for the purpose of "laundering" said monies by exchanging them for cashier, official and treasury checks in denominations of less than ten thou-

sand ($10,000.00) dollars, thereby avoiding detection of said monies by agencies of the United States Treasury.

All in violation of Title 18 United States Code, Section 1952.

The indictment, while detailing the unlawful activity and means of promoting such unlawful activity, fails to allege the subsequent performance of any act by the defendants in furtherance of the unlawful activity. Accordingly, Count 10 of the indictment is found to be defective, and must be dismissed. *See United States v. Wander, supra* at 1259.

## II. DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF UNCONSTITUTIONALITY

### A. Fourth Amendment Claim

 Defendants contend that the reporting requirements of the Bank Secrecy Act contained in 31 U.S.C. §§ 5313 and 5316 as applied to this case are unconstitutional because they violate their Fourth Amendment rights. Specifically, defendants argue that to require an individual not to structure his transactions so as to cause the bank to fail to file a CTR places a duty upon the individual which violates his privacy in structuring his banking transactions.

In recommending that this court reject this Fourth Amendment argument, the Magistrate relied on the case of *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). Defendants argue that *Miller* is not on point because that case dealt solely with the requirement that banks maintain the records of depositors, 12 U.S.C. § 1829(b)(d), and not with the domestic reporting requirements at issue here. Defendants contend that the mandatory requirement that transactions be reported to the government without judicial supervision or intervention violates their Fourth Amendment right to privacy, citing *Stark v. Connally*, 347 F.Supp. 1242 (N.D.Cal.1972).

The court has carefully considered the defendants' argument in light of *Stark* and *Miller*, and agrees that *Miller* is not directly on point. However, the court is persuaded that the rationale in *Miller*—that "the depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the government"—may be applicable to currency transactions also. 425 U.S. at 443, 96 S.Ct. at 1624. Accordingly, the court concludes that an individual who engages in a currency transaction with a bank has no reasonable expectation of privacy which is protected by the Fourth Amendment. Therefore, defendants' motion to dismiss on this ground must be DENIED.

### B. Fifth Amendment Claim

Defendants also contend that the reporting requirements contained in 31 U.S.C. §§ 5313 and 5316 as applied to them is unconstitutional because they violate their Fifth Amendment rights. The Magistrate rejected this argument based on the case of *United States v. Dichne*, 612 F.2d 632 (2d Cir.1979).

Defendants argue that the Magistrate erroneously relied on *Dichne* because *Dichne* is not on point since that case involved the requirement that foreign financial transactions be reported, and had nothing to do with the domestic reporting requirements. Defendants state that there is an important distinction between the domestic and foreign reporting requirements because the foreign requirements have "general applicability," whereas the domestic reporting requirements are focused at particular types of transactions, and since a very limited number of transactions are covered, the domestic reporting requirements are in fact aimed at an inherently suspect group.

Defendants urge that the court should be guided by the considerations set forth in *United States v. San Juan*, 405 F.Supp. 686, 694 (D.Vt.1975). Although that case also involved foreign reporting requirements, which were upheld against a Fifth Amendment challenge, defendants argue that the court's detailed discussion of the Fifth Amendment concerns involved and the balancing of competing interests pin-

point the Fifth Amendment problems with the domestic reporting requirements. Defendants specifically refer to that court's listing of the following important factors about the foreign reporting requirements which make the danger of self-incrimination "comparatively less substantial": 1) their general applicability to all persons crossing the borders with more than $5,000; 2) the comparative neutrality of the disclosures required; and 3) the possibility of avoiding the reporting requirements without incurring criminal liability, by arranging to carry less than $5,000 at each border crossing. 405 F.Supp. at 694. Defendants argue that consideration of these factors in the context of the case *sub judice* tips in favor of their claim to constitutional protection because none of these factors apply in the instant case.

 Before addressing the defendants' argument regarding the domestic reporting requirements, the court must first point out that the defendants allege that the reporting requirements of 31 U.S.C. § 5313, as well as those of 31 U.S.C. § 5316, violate their Fifth Amendment rights. Section 5316 (formerly 31 U.S.C. § 1101) covers the foreign reporting requirements, which the courts have clearly upheld against a Fifth Amendment challenge. *See United States v. Dichne, supra; United States v. San Juan, supra.* Thus, defendants' Fifth Amendment claim with respect to § 5316 must fail.

 With respect to the domestic reporting requirements, 31 U.S.C. § 5313, no case has been found which is directly on point. The court recognizes that the Fifth Amendment concerns should be balanced against the government's interest in requiring that domestic transactions be reported. *See California v. Byers,* 402 U.S. 424, 429, 91 S.Ct. 1535, 1538, 29 L.Ed.2d 9 (1971). However, the court does not find that the domestic reporting requirements are directed at any inherently suspect group, nor is the court convinced that there is a direct nexus between the required disclosure and any potential criminal activity. Accordingly, the court concludes that the domestic

reporting requirements as applied to the defendants do not violate their Fifth Amendment rights.

## III. DEFENDANTS' MOTION TO SUPPRESS

### A. Arrest of Federico

Defendant Federico Javier de Maria Campos y Vazquez contends that no probable cause existed to support his arrest. The Magistrate, upon considering the "totality of the circumstances" as stated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), found to the contrary.

Defendant argues that the evidence presented by the government only proves that Federico had some association with individuals suspected of committing a crime, and that evidence of mere association is not enough to constitute probable cause for an arrest. In support of his position, Federico cites *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *United States v. DiRe,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *United States v. Butts,* 704 F.2d 701, 703–704 (3rd Cir.1983); *United States v. Barber,* 557 F.2d 628, 630–633 (8th Cir.1977); *United States v. Wynn,* 544 F.2d 786, 789–790 (5th Cir.1977).

 The court has reviewed the cases cited by the defendant, in comparison to the facts and circumstances of this case, and the court finds that there was sufficient probable cause to arrest Federico. As previously stated, probable cause must be tested under the "totality of the circumstances" standard, *Illinois v. Gates, supra.* In the case at bar, the evidence indicates that the white four-door Chevrolet Impala rent-a-car had been leased to Federico; Federico was also responsible for paying the bills for the hotel rooms; he was observed talking to the other two defendants in the parking lot garage of the Westin Peachtree Plaza Hotel; and the "unidentified male" driving the white Impala which picked up the other two defendants at the Federal Savings and Loan Bank on Mon-

day, November 7, 1983, was found to be the same male whom Special Agent Sachs observed talking to the other two defendants in the parking lot garage, namely, Federico. Furthermore, the evidence presented to this court during the bond hearing indicated that Federico had a leadership role in the alleged crime.

For the foregoing reasons, the court concludes that probable cause existed to support the arrest of Federico Campos, and the motion to suppress with respect to this ground is DENIED.

## B. Legal Dispute

Defendants had originally filed this motion to suppress contending that all evidence obtained and all items seized from them at the time of and subsequent to their arrest should be suppressed because their actions do not constitute any crime under federal law and therefore probable cause did not exist for their arrest. The defendants have stipulated that the resolution of the motion to suppress on these grounds depends solely upon the resolution of the legal dispute raised in the defendants' motion to dismiss various counts for failure to state a crime or to inform the defendants of the charges against them.

As the court has already ruled that the indictment does state a crime under federal law pursuant to *United States v. Tobon-Builes, supra,* the defendants' motion to suppress is DENIED.

## CONCLUSION

It is hereby ORDERED that: 1) defendants' motion to dismiss various counts for failure to state a crime or to inform the defendants of the charges against them is DENIED as to Counts 2 through 9, however, said motion is GRANTED as to Count 10; 2) defendants' motion to dismiss on grounds of unconstitutionality is DENIED; and 3) defendants' motion to suppress is DENIED.