UNITED STATES of America, Plaintiff,

v.

Charles D. SCANIO, Defendant.

No. CR–88–64T.

United States District Court,
W.D. New York.

Sept. 22, 1988.

U.S. Dept. of Justice (Anthony M. Bruce, Sp. Atty., of counsel), Rochester, N.Y., for plaintiff.

Palmiere & Pellegrino, P.C. (Norman A. Palmiere, of counsel), Rochester, N.Y., for defendant.

DECISION and ORDER

TELESCA, Chief Judge.

By my Order dated April 17, 1988, I referred all pre-trial motions to Magistrate Kenneth R. Fisher to hear and determine pursuant to 28 U.S.C. § 636(b)(1)(A) or hear and report pursuant to 28 U.S.C. § 636(b)(1)(B). On August 17, 1988, Magistrate Fisher filed his Report and Recommendation in which he concluded that the defendant's motion to dismiss the indictment should be denied. On August 26, 1988, defendant filed written objections to the Magistrate's Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). Because I find that the defendant's objections are without merit, I affirm the Magistrate's Report and Recommendation in its intirety.

Defendant, Charles D. Scanio, was charged in a one count indictment with structuring and attempting to structure a currency transaction with a domestic financial institution for the purpose of evading the currency reporting requirements set forth in 31 U.S.C. § 5313(a) and 31 C.F.R. § 103.22(a), in violation of 31 U.S.C. §§ 5324 and 5322 and 18 U.S.C. § 2. Scanio moved to dismiss the indictment arguing that 31 U.S.C. § 5324 is void for vagueness in violation of the Fifth Amendment and that the statute violates his Fifth Amendment privilege against self-incrimination. In his exhaustive Report and Recommendation, Magistrate Fisher rejected both arguments.

Scanio objects to the Magistrate's conclusion that 31 U.S.C. § 5324(3) is not void for vagueness. The Supreme Court has held that in addressing a claim of vagueness, the court "should uphold the [vagueness] challenge only if the enactment is impermissibly vague and all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). The Court also indicated that a criminal enactment that includes a scienter requirement may be less susceptible to a vagueness challenge because that intent requirement provides notice of proscribed conduct. *Village of Hoffman Estates, supra*, 455 U.S. at 499, 102 S.Ct. at 1193. The Magistrate correctly concluded that intent requirement in 31 U.S.C. § 5324(3) saves it from defendant's vagueness challenge.

## CONCLUSION

I have thoroughly reviewed and considered all of defendant's objections to the Magistrate's Report and Recommendation and find them to be meritless. Each argument raised was carefully considered by the Magistrate and properly rejected by him.

WHEREFORE, the Magistrate's Report and Recommendation dated August 17, 1988, is hereby affirmed and adopted in its entirety. Defendant's motion to dismiss the indictment is denied for all of the reasons stated in the Magistrate's Report and Recommendation.

The case will proceed to trial on October 25, 1988 with jury selection at 10:00 A.M.

ALL OF THE ABOVE IS SO ORDERED.

## REPORT AND RECOMMENDATION

KENNETH R. FISHER, United States Magistrate.

In this criminal action, the defendant is charged in a one count indictment with structuring a currency transaction in excess of $10,000 with Citibank, a domestic financial institution, for the purpose of evading the currency reporting requirements of 31 U.S.C. § 5313(a) and 31 C.F.R. § 103.22(a), in violation of 31 U.S.C. §§ 5324 and 5322 and 18 U.S.C. § 2. Defendant has moved pursuant to Fed.R. Crim.P. 12(b) for an order dismissing the indictment on the ground that the statute is, on its face, unconstitutionally vague, and on the further ground that the effect of 31 U.S.C. § 5324 is to force the defendant, under pain of prosecution under that section, to waive his Fifth Amendment privilege against self incrimination. *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

Defendant has submitted a memorandum in support of his motion which states that, on March 1, 1988, "defendant paid toward the balance of a loan he owed Citibank by paying $9,500.00 in cash" and then that defendant returned "on March 2, 1988, and paid $3,601.17 in cash on the balance of the loan." Defendant's Memorandum, at 1.

This motion has been referred to the Magistrate pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. The following constitutes a report and recommendation that the motion be denied.

### I

The statute at issue in this case was passed as part of The Comprehensive Anti-Drug Abuse Act of 1986, Public Law 99–570, 100 Stat. 3207 (October 27, 1986), and is part of Title I of subtitle H of such Act,

entitled the "Money Laundering Control Act of 1986." Made effective to transactions "completed after the end of the three month period beginning" October 27, 1986 (Act Oct. 27, 1986, PL 99–570, Title I, Subtitle H, § 1364(a), 100 Stat. 3207–34), this provision reads as follows:

**Section 5324. Structuring transactions to evade reporting requirement prohibited.**

No person shall for the purpose of evading the reporting requirements of § 5313(a) with respect to such transaction—

(1) cause or attempt to cause a domestic financial institution to fail to file a report required under § 5313(a);

(2) cause or attempt to cause a domestic financial institution to file a report required under § 5313(a) that contains a material omission or misstatement of fact; or

(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

The court is unaware of any reported decision in which the provisions of § 5324 have been explicated. Cf., *United States v. Mastronardo*, 849 F.2d 799, 802 n. 8 (3d Cir.1988) ("Congress has since acted to clarify the status of 'structuring' "); *United States v. Herron*, 825 F.2d 50, 55–56 (5th Cir.1987). However, the legislative history provides ample background material. The Senate report to accompany the Money Laundering Crimes Act of 1986 provides the best description of this new legislation.

This section impose[s] civil and criminal penalties on a person who causes or attempts to cause a financial institution not to file a required report or to file an incorrect report or to structure (or attempt or assist in structuring) a transaction to evade the reporting requirements of this title. Under present law, money launderers are successfully prosecuted in some judicial circuits for causing financial institutions not to file reports on multiple currency transactions totaling more than $10,000 or causing financial

institutions to file incorrect reports. In such cases, the actual money launderers are charged with violations of 18 U.S.C. 2 (aiding and abetting or causing another to commit an offense) and section 1001 (concealing from the Government a material fact by a trick, scheme, or device). For example, in *United States v. Tobon–Builes*, 706 F.2d 1092 (11th Cir.1983), the Eleventh Circuit Court of Appeals upheld a conviction under 18 U.S.C. 1001 where the defendants had engaged in a money laundering scheme in which they had structured a series of currency transactions, each one less than $10,000 but totaling more than $10,000, to evade the reporting requirements. *See also United States v. Massa*, 740 F.2d 629, 645 (8th Cir.1984), *cert. denied sub nom Skinner v. United States*, 471 U.S. 1115, 105 S.Ct. 2357 [86 L.Ed.2d 258] (1985); *United States v. Sanchez Vazquez*, 585 F.Supp. 990, 993 (N.D.Ga.1984); *United States v. Konefal*, 566 F.Supp. 698 (N.D.N.Y.1983) (prosecution for structuring upheld under title 31). In contrast, the First Circuit Court of Appeals, in *United States v. Anzalone*, 766 F.2d 676 (1st Cir.1985), the Eleventh Circuit Court of Appeals in *United States v. Denemark*, 779 F.2d 1559 (11th Cir.1986), and the Ninth Circuit Court of Appeals in *United States v. Varbel*, 780 F.2d 758 (9th Cir. 1986) have held that structuring currency transactions to avoid the reporting requirements did not violate 18 U.S.C. section 1001.

[This section] ... would codify *Tobon–Builes* and like cases and would negate the effect of *Anzalone*, *Varbel* and *Denemark*. It would expressly subject to potential liability a person who causes or attempts to cause a financial institution to fail to file a required report that contains material omissions or misstatements of fact. *In addition, the proposed amendment would create the offense of structuring a transaction to evade the reporting requirements, without regard to whether an individual transaction is, itself, reportable under the Bank Secrecy Act.* For example, a person who converts $18,000 in currency

to cashier's checks by purchasing two $9,000 cashier's checks at two different banks or on two different days with the specific intent that the participating bank or banks not be required to file Currency Transaction Reports for those transactions, would be subject to potential civil and criminal liability. A person conducting the same transactions for any other reasons or person splitting up an amount of currency that would not be reportable if the full amount were involved in a single transaction (for example, splitting $2,000 in currency into four transactions of $500 each), would not be subject to liability under the proposed amendment.

S.Rep. No. 99–483, 99th Cong.2d Sess. at 21–22 (1986). As Senator Alfonse D'Amato, the original sponsor of this legislation, stated in hearings before the Senate Committee on Banking, Housing, and Urban Affairs,

[This section] ... closes the loophole in present law used by launderers of money and other criminal profits. Because today's Bank Secrecy Act only requires that deposits of more than $10,000 be reported on IRS currency transaction reports [CTR's] money launderers often make multiple deposits of under $10,000 each, within very brief periods of time to avoid the Act's reporting rules.

In other words, our bill closes the so-called structuring loophole. The need to close this loophole is paramount because the government has lost three major structuring cases on appeal in the last year: *United States v. Anzalone, United States v. Denemark,* and *United States v. Varbel.*

*The Drug Money Seizure Act and the Bank Secrecy Act Amendments: Hearing on S. 571 and S. 2306 Before the Committee on Banking, Housing, and Urban Affairs of The United States Senate,* 99th Cong.2d Session (S.Hrg. 99–692) at 5 (May 1, 1986) (opening statement of Senator Alfonse M. D'Amato.)

In testimony before the same Committee, provided in a prepared statement, IRS Assistant Commissioner Richard C. Wassenaar referred to the Circuit Court decisions cited above, which made it difficult to prosecute a bank customer for causing a financial institution to fail to file a currency transaction report, and described the purpose of the new legislation as follows:

The proposed legislation corrects these problems by making the act of structuring, for the purpose of evading the CTR reporting requirements, a crime. Rather than focusing upon the defendant's conduct after the currency is broken into increments, and after the CTR reporting requirements have been successfully evaded, the proposed legislation shifts the focus of this back to the point and time when a given amount of currency is *structured* for the purpose of evading the CTR reporting requirements. The government will no longer be forced to prove that a transaction actually occurred in a particular financial institution which would have required the institution to file a CTR, if the institution were aware of the transaction (See e.g., *Denemark*). Rather, the government must prove that the customer structured a transaction for the purpose of preventing a CTR from being filed.

*Id.* at 49 (emphasis in original). In similar testimony before the Committee, Deputy Assistant Attorney General James I.K. Knapp testified that section 5324 "is a clear message and restatement to money launderers that *all forms* of structuring currency transactions for the purpose of evading the Bank Secrecy Act's reporting requirements constitutes criminal conduct." *Id.* at 62 (emphasis supplied). By "structured" currency transactions Deputy Assistant Attorney General Knapp referred to

currency transactions which are intentionally broken down into a series of smaller transactions, each under $10,000, for the purpose of evading the reporting requirements of the Bank Secrecy Act. This process, commonly known as "smurfing" is undertaken by individuals or groups of individuals who, intending to prevent banks from reporting their currency transactions, engage in a series of cash transactions each under $10,000 at different banks on different days, different banks on the same day, or at the

same bank, or its branches, on different days. It is the purpose and intent of this process to transfer or "move" a much larger aggregate amount of currency through financial institutions while insuring that banks do not report the actual movement of the currency or the identities of the parties involved.

\* \* \* \* \* \*

[R]ecent appellate court decisions, ..., have reversed convictions of persons who intentionally cause financial institutions to fail to file currency transaction reports by "structuring" currency transactions. In effect, these court decisions interpret the present law as to either not prohibit or only partially limit the "structuring" of currency transactions even though it may be proven that the intent of the conduct was to purposely evade the reporting requirements of the Bank Secrecy Act.

The legislation proposed ... should close this money laundering "loophole." The proposed section is a clear message and restatement to money launderers that *all forms* of structuring currency transactions for the purpose of evading the Bank Secrecy Act's report requirements constitutes criminal conduct. The law, as rewritten, would clarify any ambiguities in the current law.

*Id.* at 66–67 (emphasis supplied). Furthermore in testimony provided by the statement of Robert H. Hodges, Jr., on behalf of the American Bankers Association before the Committee on Banking, Housing and Urban Affairs, Mr. Hodges stated:

[The bill] ... introduced by Senator D'Amato and its companion H.R. 4573 introduced by Representative Pickle are cogent attempts to stem the evasive tactics of money launderers who avoid currency reports by making multiple transactions that are in the aggregate over $10,000.

This practice, known as "structuring" or "smurfing" allows criminals to exchange illegally derived monies for cashiers checks, travelers checks, etc. The D'Amato approach would subject persons to criminal and civil liability for causing or attempting to cause a domestic financial institution to "fail to file a (currency transaction report)", or to file the report with "a material omission or misstatement of fact" or structuring or assisting in structuring a transaction "for the purpose of evading the reporting requirements." This language will address the structured transaction problem which has forced the courts to dismiss charges against individuals who may have been involved in deliberate evasion of the Bank Secrecy Act reporting requirements.

*Id.* at 91–92 (citing *United States v. Anzalone, supra; United States v. Denemark, supra; United States v. Varbel, supra* ).

The House report concerning the companion bill described the phenomenon which provoked Congressional action against money laundering.

In the late 1970's as narcotics trafficking in this country began to rise in alarming proportions, a number of prosecutions involving the laundering of drug money through structured cash conversion schemes were conducted in several United States District Courts. These schemes are often dubbed "smurfing." One who does the smurfing is called a "smurf." (The term is derived from a popular children's TV cartoon, and, as applied to money laundering, suggests one who is a runner for a large "smurfing" ring. Typically, the smurf (or runner) goes to several financial institutions and converts large amounts of drug cash into negotiable instruments (i.e., cashier's checks) for amounts of less than $10,000 in order to avoid the currency reporting requirements of the Bank Secrecy Act.

Under present Treasury regulations, only financial institutions have the duty to file reports for currency transactions over $10,000. This has created some problems for the government in the prosecution of these cases. A number of United States appellate court decisions have issued conflicting opinions as to whether smurfing schemes are a crime. In some judicial circuits, money launder-

ers have been successfully prosecuted for causing financial institutions not to file reports on such multiple currency transactions. In such cases, defendants are charged with violations of 18 U.S.C. 2 (aiding and abetting or causing another to commit an offense) and § 1001 (concealing from the government a material fact by a trick, scheme or device) [citing *United States v. Tobon–Builes*, 706 F.2d 1092 (11th Cir.1983)].

In contrast, other cases have held that the Act and its regulations impose no duty on the customer to inform the financial institution of the structured nature of the transactions, that the reporting duties are placed solely upon the financial institution, and therefore, only a financial institution can directly violate the reporting requirements. [citing, *United States v. Anzalone, supra; United States v. Varbel, supra;* and *United States v. Denemark, supra*].

The Committee believes that section 2 of H.R. 5176 would resolve the legal issues raised by the various circuit courts by expressly subjecting to potential liability a person who causes or attempts to cause a financial institution to fail to file a required report or who causes a financial institution to file a required report that contains material omissions or misstatements of fact. *In addition, it would create the offense of structuring a transaction to evade the reporting requirements, without regard for whether an individual transaction is, itself, reportable under the Bank Secrecy Act.*

H.R.Rep. No. 99–746, 99th Cong.2d Sess. at 18–19 (August 5, 1986) (emphasis supplied).

Finally, in response to written questions of Senator D'Amato from Deputy Attorney General James I.K. Knapp, the following colloquy, pertinent to this case, occurred:

Q. 1.(f) Does S. 2306 adequately protect innocent parties who may inadvertently engage in a structuring transaction from prosecution? How does S. 2306 avoid the unintended prosecution of these individuals?

A. 1.(f) S. 2306 requires proof beyond a reasonable doubt that the purpose of the "structured" aspect of a currency exchange was to evade the report requirements of the Bank Secrecy Act. It is this requirement which shields innocent conduct from prosecution.

Q. 1.(g) Before the decision to prosecute is made, wouldn't you have to determine that a series of structuring transactions has occurred? How would this be determined since the financial institution would not have to file any CTR's—What evidence of structuring could you obtain?

. . .

A. 1.(g) Any decision to prosecute an individual for "structuring" a currency transaction in violation of section 1 of S. 2306 would require proof of the components or series comprising the overall transaction. Violations related to the structuring of transactions would be proven through evidence surrounding the structuring itself, such as the purchase of cashier's checks made payable to fictitious payees, or proof that persons acting in concert broke down a larger sum of cash into smaller amounts which were later recombined in a single account or monetary instrument. The evidence would also necessarily require proof beyond a reasonable doubt that the purpose of the "structuring" was the evasion of the reporting requirements of the Bank Secrecy Act, and not some legitimate purpose.

S.Hrg. 99–962 on S. 571 and S. 2306, *supra,* at 136–37.

With this background in mind, the court now turns to defendant's two grounds in support of the motion to dismiss the indictment.

## II

 In support of his motion to dismiss the indictment on the ground that 31 U.S.C. § 5324(3) is unconstitutionally vague, and does not provide adequate notice of the proscribed conduct, the defendant cites *Grayned v. Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618,

83 L.Ed. 888 (1939) and he stresses the lack of a provision in section 5324 defining the term "structure." Defendant speculates that the statute "can expose a person to criminal liability who elects to pay off a single loan with the same bank with a series of cash payments over the life of the loan merely because sufficient cash was available to pay off the loan in one or two payments, a fact perhaps indicative of the statute's scienter requirement." Defendant's Memorandum, at 7. Defendant explains that "the statute simply gives an inordinate amount of governmental discretion in choosing who it will or will not prosecute under the statute and therefore encourages arbitrary and discriminatory enforcement and does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited." Defendant's Memorandum, at 7–8.

In response, the government contends that the term "structure" was left "undefined so as not to limit its scope in any way." Government's Memorandum, at 3. The government further contends that "[t]he simple answer to this argument is that Congress intended to proscribe *all* forms of structuring currency transactions for the purpose of evading the reporting requirements under 31 U.S.C. § 5313(a), irrespective of whether such activities previously were considered legal or illegal." Government's Memorandum, at 3 (emphasis in original). The government further contends that "[t]he term 'structure' is not a term of art and the concept of 'structuring a financial transactions' [sic] so as to accomplish a specified purpose is certainly not beyond the ken of ordinary lay persons." Defendant's Memorandum, at 6.

In support of this latter argument, the government has provided a copy of an order denying a similar motion to dismiss in *United States v. Camarena*, No. EP–87–CR–133 (W.D.Tex. April 7, 1988) (unpublished decision). It appears that in that case the court rejected a virtually identical argument that section 5324 is void for vagueness. The court stated:

Defendant first contends that the statute under which she has been charged is void for vagueness. Specifically, she complains that neither the statute nor the regulations promulgated by the Secretary of the Treasury define the term "structure". This contention is without merit. The word "structure" has no peculiar, exotic or legal meaning as used in this statute; it is used in its common, ordinary, English language, dictionary meaning. When sections 5313(a) and 5324 are compared and considered together, it is not difficult to determine the kind of conduct that is being prohibited.

*Id.* (slip opn. at 2–3). The government emphasizes that "[s]ection 5324(3) simply makes clear that the law now reaches *all* 'structuring' schemes aimed at evading the reporting requirements irrespective of whether the 'sub-transactions' or 'component parts' occur at different financial institutions or on different days." Defendant's Memorandum, at 10 (emphasis in original).

Because defendant does not challenge § 5324 on the grounds of overbreadth, and he does not contend that the statute implicates conduct protected under some specific provision of the Constitution, the controlling rule applicable to this case is that the court "should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1190–91, 71 L.Ed.2d 362 (1982). In order for the defendant to succeed he "must demonstrate that the law is impermissibly vague in all of its applications." *Id.* 455 U.S. at 497, 102 S.Ct. at 1192. In other words, "[a] court should ... examine the complainant's conduct before analyzing other hypothetical applications of the law" because "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to others." *Id.* 455 U.S. at 495, 102 S.Ct. at 1192.

The defendant cites the correct case which articulates the standards for determining a vagueness claim. In *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the court stated:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policeman, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Grayned v. City of Rockford*, 408 U.S. at 108–09, 92 S.Ct. at 2298–99 (quoted in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. at 498, 102 S.Ct. at 1193).

However, as the Court observed in *Hoffman Estates*, although the Constitution gives less tolerance to vague enactments of criminal statutes, "because the consequences of imprecision are qualitatively [more] severe[,] ... the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. at 498–99, 102 S.Ct. at 1193. Justice Brennan's opinion in *Wright v. New Jersey*, 469 U.S. 1146, 105 S.Ct. 890, 83 L.Ed.2d 906 (1985) more fully explicates the relationship between vagueness and a statute's requirement of mental culpability.

We have "long recognized the the constitutionality of a vague statutory standard is closely related to *mens rea*." *Colauetti v. Franklin*, 439 U.S. 379, 395 [99 S.Ct. 675, 685, 58 L.Ed.2d 596] (1979). See generally, *United States v. United States Gypsum Co.*, 438 U.S. 422, 434–436 [98 S.Ct. 2864, 2872–73, 57 L.Ed.2d 854] (1978).

\*　　\*　　\*　　\*　　\*　　\*

A statute that requires scienter "mitigate[s]" the vagueness of its other terms by helping to ensure that the defendant had adequate notice and by guarding against capricious enforcement through the requirement that he actually have intended the conduct which the statute seeks to guard against. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 [102 S.Ct. 1186, 1193, 71 L.Ed.2d 362] (1982); *see also Grayned v. City of Rockford*, 408 U.S. 104, 111, 114 [92 S.Ct. 2294, 2301, 2302, 33 L.Ed.2d 222] (1972). The absence of such a requirement, on the other hand, enhances the risks of unfair notice and arbitrary enforcement. See e.g., *Screws v. United States*, 325 U.S. 91, 101–102 [65 S.Ct. 1031, 1035, 89 L.Ed. 1495] (1945) (plurality opinion).

*Wright v. New Jersey*, 469 U.S. at 1151 and n. 5, 105 S.Ct. at 894 and n. 5 (Brennan, J., dissenting from dismissal of appeal for want of a substantial federal question).

An examination of both prongs of the vagueness challenge follows. However, in this case as in *Hoffman Estates*, which involved a pre-enforcement challenge to a statute in an action for declaratory and injunctive relief, the nature of this pretrial motion to dismiss is such that "no evidence has been, or could be, introduced to indicate whether the ordinance has been enforced in a discriminatory manner or with the aim of inhibiting" constitutionally protected conduct. *Id.* 455 U.S. at 503, 102 S.Ct. at 1196. Even if the "risk of discriminatory enforcement" is significant, a court should be unprepared to say at the stage of proceedings involved in this case and which was involved in *Hoffman Estates*, "that this risk jeopardizes the entire ordinance." *Id.* 455 U.S. at 503, 102 S.Ct. at 1196. *Compare Kolender v. Lawson*, 461 U.S. 352, 357–62, 103 S.Ct. 1855, 1857–60, 75 L.Ed.2d 903 (1983) (striking down a statute permitting the arrest of a suspect who fails to produce a "credible and reliable" identification, on the grounds that "the statute vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute and

must be permitted to go on his way in the absence of probable cause to arrest.")

Applying these principles to the case at hand is not particularly difficult. First, the lack of a definition of "structure" in the statute is not fatal. The court's treatment of this issue in *United States v. Camarena, supra* (quoted above) is persuasive, particularly in view of the government's contention, supported in the legislative history, that § 5324(3) was intended to reach "all" forms of structuring currency transactions for the purpose of evading the reporting requirements. While "there are limitations in the English language with respect to being both specific and manageably brief," *Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973), "if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise." *United States v. Harriss,* 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954) (quoted in *Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. at 579, 93 S.Ct. at 2897). *See Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974) (plurality opinion). Succinctly put, "[m]any statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.'" *Rose v. Locke,* 423 U.S. 48, 49–50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975) (upholding statute proscribing "crimes against nature") (quoting *Robinson v. United States,* 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945)).

The term "structure," as it relates to an individual's conduct of a currency transaction, very simply refers to the manner in which the transaction is effected. Congress could just as easily have chosen the phrase, "transact in currency for the purpose of evading the reporting requirements," to reach the same conduct. The use of the word "structure" adds no mystifying element to the crime; indeed the choice of the term structure reveals an intent to focus on the "organized" nature of the currency transaction thus providing a slightly more limiting interpretation of the crime than the use of the word transact might permit. *Compare Webster's Third New International Dictionary,* at 2267 (1981) ("structure"), *with id.* at 2425 ("transact" is defined to "carry on business" or "to carry out: effect, perform").

The decision in *Lanzetta v. State of New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939) is not to the contrary. In that case, the Court struck down a penal statute declaring it unlawful to have been convicted of a crime and "known to be a member of any gang consisting of two or more persons, ..." *Id.* 306 U.S. at 452, 59 S.Ct. at 618. The Court observed that dictionary definitions of the word gang "are numerous and varied," *Id.* 306 U.S. at 454, 59 S.Ct. at 619, and that the meaning of the word is not "derivable from the common law, for neither in that field nor anywhere in the language of the law is there a definition of the word." *Id.* 306 U.S. at 455, 59 S.Ct. at 620. Finally, the Court held that "[t]he challenged provision condemns no act or omission; the terms it employs to indicate what it purports to denounce are so vague, indefinite and uncertain that it must be condemned as repugnant to the due process clause of the Fourteenth Amendment." *Id.* 306 U.S. at 458, 59 S.Ct. at 621.

By contrast, in this case, the dictionary definitions of the word "structure" are consistent and well known. Moreover, there is no hint of a "status offense" problem in this case. In addition, the term structure as it relates to currency transactions and the $10,000 reporting requirements have found ample expression in the courts. *See United States v. Mastronardo,* 849 F.2d 799, 802 n. 8 (3rd Cir.1988) ("Congress has since acted to clarify the status of 'structuring'"); *United States v. Nersesian,* 824 F.2d 1294, 1310–13 (2d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 357, 98 L.Ed. 2d 382 (1987) (and cases cited therein). In short, section 5324(3) contains none of the infirmities of the New Jersey "gang" statute struck down in *Lanzetta.*

A finding that section 5324(3) is unambiguous and provides fair notice to the accused, however, does not end the analysis. The second aspect of the void-for-vagueness doctrine questions whether the statute "may nevertheless be vague in that it fails to provide a 'reasonably ascertainable standard of guilt.'" *Dorman v. Satti,* 678 F.Supp. 375, 380 (D.Conn.1988) (*quoting Herndon v. Lowry,* 301 U.S. 242, 264, 57 S.Ct. 732, 742, 81 L.Ed. 1066 (1932)). The Due Process clause "also requires that the terms of the statute be clear enough to prevent arbitrary and discriminatory enforcement by the prosecutor, the court, or the jury." *United States v. Lambert,* 446 F.Supp. 890, 896 (D.Conn.1978), *aff'd sub nom., United States v. Girard,* 601 F.2d 69, 71 (2d Cir.1979), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). In *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903, the Court emphasized this prong of the vagueness analysis.

> Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith* [*v. Goguen* ], 415 U.S. [566], ... 574 [94 S.Ct. 1242, 1248, 39 L.Ed.2d 605] [1974]. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* at 575 [94 S.Ct. at 1248].

*See Herndon v. Lowry,* 301 U.S. at 263, 57 S.Ct. at 741 (voiding an incitement to insurrection statute which "license[d] the jury to create its own standard [of guilt] in each case.").

■ However, § 5324(3) is not a standardless penal provision. Aside from its reference to the currency transaction reporting requirements and its focus on the structuring of transactions, both elements being objective and not subjective in nature, the statute has a clear scienter re-quirement. To come within its terms, an accused must act (i.e., "structure" the currency transaction) specifically "for the purpose of evading the reporting requirements of [31 U.S.C.] section 5313(a) with respect to such transaction ..." 31 U.S.C. § 5324 (preamble). As nicely summarized by Justice Brennan in *Wright v. New Jersey, supra,* the requirement of mental culpability, here purposeful conduct, "guard[s] against capricious enforcement through the requirement that [the defendant] actually have intended the conduct which the statute guards against." *Id.* 469 U.S. at 1151 n. 5, 105 S.Ct. at 894 n. 5 (Brennan, J., dissenting from dismissal of appeal for want of a substantial federal question). *See also United States v. Heyman,* 794 F.2d 788, 792 (2d Cir.1986), *cert. denied,* 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986); *United States v. Tota,* 672 F.Supp. 716, 722 (S.D.N.Y.1987) (adequacy of former statutes to state "criminality of structuring"), *aff'd mem. sub nom., United States v. Fahmy,* 847 F.2d 836 (2d Cir. 1988).

This reasoning answers directly defendant's argument that "[b]y not defining a 'structure' in terms of duration, the statute simply gives an inordinate amount of governmental discretion in choosing who it will or will not prosecute under the statute ..." Defendant's Memorandum, at 7–8. It is not quite fair to speculate, as defendant does here, that the statute "expose[s] a person to criminal liability who elects to pay off a single loan with the same bank with a series of cash payments over the life of the loan merely because sufficient cash was available to pay off the loan in one or two payments...." *Id.* at 7. The argument fully ignores that, in common sense and in the law of installment loans, the intent of the parties in such cases has nothing to do with purposeful evasion of the reporting requirements. While the statute does not limit structuring to any specific period of time, it is undoubtedly true that evidence of duration, when considered with other innocent circumstances, will be highly probative of the lack of purposeful evasion. Indeed, except in unusual

circumstances, the terms and financing aspect of any installment loan would defeat a government claim of purposeful evasion resulting from an accused's simple adherence to the installment terms of the loan.

Accordingly, § 5324(3) is not void for vagueness. It gives fair notice and provides sufficient standards for the administrators of law enforcement.

## III

■■■] Defendant's second facial challenge to § 5324(3) is that it offends his Fifth Amendment privilege against self-incrimination. Defendant argues that "requiring the customer making a structured currency transaction exceeding $10,000 to notify the bank that the component parts are essentially one transaction ..., force[s the customer] under pain of prosecution under 5324 to waive his Fifth Amendment privilege under the Constitution." Defendant's Memorandum, at 8. This argument is without merit.

First, if the customer makes the notification described in the foregoing paragraph, he or she could not be prosecuted under § 5324 because, as defendant concedes, such a notification "negates the intent to evade the reporting requirements." *Id.* at 8. Second, simply notifying the proper authorities of the component parts of a transaction over $10,000 does not require the customer to divulge any incriminating information. Defendant seems to concede this as well when he recognizes that "large currency transactions are not inherently illegal." *Id.* at 8.

Defendant's primary concern appears to be that the statute creates an obligation in the customer structuring a currency transaction to take some action which alerts the financial institutions of the size of the transaction and that this action will reveal collateral crimes related, perhaps, to the circumstances of procurement of the money. However, § 5324 imposes no affirmative obligation in the customer to report. If it did, any Fifth Amendment challenge would be premature unless the self-incrimination privilege was asserted and rejected within the administrative reporting proce-

dure applicable to the transactions in question. *California Bankers Association v. Shultz*, 416 U.S. 21, 71–75, esp. 75, 94 S.Ct. 1494, 1522–24, 39 L.Ed.2d 812 (1974). The "exception to the normal rule requiring assertion of the Fifth Amendment privilege," created by *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), applies only where the reporting requirement or other compelled disclosure "did not merely call attention to" the individual, but instead "the very filing *necessarily* admitted illegal ... activity." *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 858 n. 16, 104 S.Ct. 3348, 3358 n. 16, 82 L.Ed.2d 632 (1984).

Here, however, the statute only proscribes "structuring" with a purpose to evade. If the effect of § 5324(3) is to force individuals to transact currency with financial institutions in the full amount of the transaction, this invokes no Fifth Amendment concern. A simple deposit or payment in an amount over $10,000 is not incriminating. Moreover, if the customer prefers to structure a transaction over $10,000 for a legitimate purpose, that purpose should only be evidenced by the parties in some manner which, by its reference to the legitimate purpose, would not be incriminating.

If defendant's Fifth Amendment challenge was directed at the reporting requirements themselves and was ripe for review, *California Bankers Association v. Shultz*, 416 U.S. at 71–75, 94 S.Ct. at 1522–24, it would have to be rejected on the authority of *United States v. Dichne*, 612 F.2d 632, 638–41 (2d Cir.1979) (distinguishing *Marchetti v. United States, supra* ), cert. denied, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed. 2d 760 (1980) and *United States v. Sanchez Vazquez*, 585 F.Supp. 990, 996 (N.D.Ga., 1984). The court believes, that for the reasons stated above, § 5324(3) adds no additional element of compelled disclosure worthy of separate or different treatment under the Fifth Amendment. The alternatives left open to a bank customer by enactment of § 5324(3) "presents only 'imagi-

nary and insubstantial' hazards of incrimination, rather than the 'real and appreciable' risks needed to support a Fifth Amendment claim." *Minor v. United States,* 396 U.S. 87, 97–98, 90 S.Ct. 284, 289, 24 L.Ed.2d 283 (1969).

### CONCLUSION

The foregoing constitutes the Report of the Magistrate and his Recommendation that defendant's motion to dismiss the indictment be denied.

The parties should be on notice that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 37(A)(3), any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt thereof. Failure to file objections within the specified time waives the right to appeal a District Court Order adopting this Report and Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).