**Harry S. PEARE, Individually and on behalf of a class of persons in the State of Indiana similarly situated, Plaintiff-Appellant,**

v.

**Harry T. McFARLAND, in his capacity as Director of Indiana Employment Security Division, William H. Skinner, Paul M. Hutson, and Daniel L. Adams, Defendants-Appellees,**

and

**United States Department of Labor, Defendant-Intervenor-Appellee.**

No. 84–1360.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1984.

Decided Nov. 27, 1985.

Ivan E. Bodensteiner, Legislative Service Program of North Ind., Valparaiso, Ind., for plaintiff-appellant.

Michael Kimmel, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for appellee.

Before CUDAHY and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

This appeal involves an application of the federal law governing a State's offset of Social Security retirement benefits against unemployment compensation. Indiana is the State involved here. The same question has been presented in the Sixth and Ninth Circuits and decided in favor of the offset. *Bowman v. Stumbo,* 735 F.2d 192 (6th Cir.1984) and *Rivera v. Becerra,* 714

F.2d 887 (9th Cir.1983), *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984). We reach the same conclusion. The opposite decision was made in *Edwards v. Valdez*, 602 F.Supp. 361 (D.Colo.1985) *appeal pending*, Nos. 85–1552, 85–1650 (10th Cir., April 11, 1985, May 5, 1985). We shall attempt to avoid unnecessary duplication of the background material included in those opinions.

## I

Harry Peare, the named plaintiff, retired and started receiving Social Security retirement benefits in 1973. He was 65. In 1981 he went to work for Mathis Machine Corporation. He had not previously worked for Mathis. After 18 months, Peare was laid off and applied for unemployment compensation.

Mathis, his "base period employer" for the purpose of unemployment compensation, paid FICA taxes with respect to its employees, including Peare. IESD, the appropriate Indiana agency, granted unemployment compensation, but reduced it by 50% of Peare's Social Security benefits.

Peare filed this class action against McFarland, the Director of IESD. The United States Department of Labor was permitted to intervene. The district court granted the Department's motion for summary judgment. *Peare v. McFarland*, 577 F.Supp. 791, 795 (N.D.Ind.1984). Peare appealed from the judgment accordingly entered.

The federal statute involved is 26 U.S.C. § 3304(a)(15) as amended by Pub.L. 96–364, § 414, 94 Stat. 1208, 1310 (1980).

As enacted in 1976, the statute had required States to reduce unemployment compensation by 100% of all pension income. Apparently considering that this requirement may have gone too far, Congress postponed the effective date. The 1980 amendment was designed to ameliorate the so-called offset requirement. It clearly did so. The present dispute with respect to Social Security is whether greater liberalization was intended.

26 U.S.C. § 3304(a) requires the Secretary of Labor to approve any State law which he finds contains certain provisions. Subsection (15) is the offset requirement, compelling reduction of compensation by the amount of "a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of" the applicant.

The 1980 amendment added two conditions, (A)(i) and (A)(ii) which are to be fulfilled before the offset is required, and added (B) permitting a State to limit the offset where the worker made contributions for the payments.

The (A)(i) condition is fulfilled if the payment "is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined under applicable law)."

Everyone concedes that Social Security retirement benefits constitute one of the types of payment dealt with by subsection (15). Indeed, if that were not so, there would never be a reduction of unemployment compensation as a result of Social Security benefit payments. Although in the course of formulation of the 1980 amendment the House of Representatives had adopted a provision that the offset "shall not apply to any amount paid under the Social Security Act or the Railroad Retirement Act of 1974 ...," this provision did not survive the Committee of Conference. House of Representatives Report No. 96–1343, September 18, 1980. Indeed, Social Security (and Railroad Retirement) payments are expressly excepted from "such a payment" in condition (A)(ii). This exception carries the clear implication that when "payments" are referred to in parts of subsection (15) other than (A)(ii), Social Security retirement benefits are included.

Condition (A)(i) must be fulfilled before an offset is required. In this case Social Security is the "plan" under which Peare's Social Security benefits are paid, and Mathis, the base period employer, "contributed to" it, giving those terms their ordinary meaning in the field of pensions and retire-

ment. If Social Security were not a "plan," "contributed to" through FICA taxes, the (A)(i) condition would never be met as to Social Security benefits and they would never be offset. Yet everyone concedes that there are some circumstances under which Social Security benefits must be offset.

Plaintiff suggests that there should be an interpretation of "plan" and "contributed to" under which an employer will be deemed to contribute to an *individual worker's* Social Security "plan" only during periods when the contributions affect that worker's eligibility for Social Security benefits. Plaintiff's interpretation would require a strained, unusual meaning of the terms.

Moreover, Congress directly addressed the concept advocated by plaintiff in adding condition (A)(ii), but made it inapplicable to Social Security payments. The (A)(ii) condition is:

> in the case of such a payment not made under the Social Security Act or the Railroad Retirement Act of 1974 ... services performed for such employer after the beginning of the base period (or remuneration for such services) affect eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity, or similar payment....

Plaintiff also suggests that it was the intention of Congress that Social Security benefits are not to be offset unless the base period employer has also employed the worker at the time he became "fully insured" under the Social Security Act, a status normally achieved after about ten years of employment subject to the Act. Just why offset is required only if the base period employer had been the employer at that point rather than during some period within which the amount of benefits were being increased, or at the point the worker first became entitled to draw Social Security payments, or first actually drew payments is not explained, and certainly no statutory language suggests an answer.

## II

The bill which was enacted, after amendment in both Houses and a compromise reached in Conference, was H.R. 3904. Two other House Bills addressed the subject. H.R. 5507 did not reach the Senate, but H.R. 3612 did so, and was amended there. The parties cite statements of members of the House and Senate concerning the various versions of all three bills. With one arguable exception, a statement by Senator Bradley, these statements convey no clear message concerning our problem. Plaintiff's reply brief concedes that except for Senator Bradley's remarks, the legislative history does not "conclusively" support the position of either side.

Senator Bradley had been a co-sponsor, along with Senator Chafee, of an amendment to H.R. 3904 adopted by the Senate before the Senate passage of the bill and before the deliberations of the Committee of Conference. He had not, however, been a member of that Committee.

He spoke while the Conference Report was being considered by the Senate on September 18, 1980. Senator Bradley said he was "pleased" that the Committee of Conference had chosen to sustain the "corrective" amendment he and Senator Chafee had offered. He gave examples of how the new law would work. One of these was as follows:

> First, an individual at Company A retires and begins to collect social security. For whatever reason, this person then goes to work for Company B and, after 6 months there, is terminated. Assuming the individual is eligible for unemployment insurance because of the work done at Company B, the level of unemployment insurance will not be reduced at all. This is because the base period employer is not the same as the social security employer. The offset would apply however if the individual had returned to work for Company A instead of working for Company B. Under those circumstances, the base period employer and

the social security employer would be the same.

126 Cong.Rec. 26040–41 (Sept. 18, 1980).

Senator Bradley's example supports the result for which plaintiff contends, although it does not assist in explaining how the statutory language chosen would accomplish the result. Moreover, the example gives no guidance as to the meaning of "social security employer" except that the "social security employer" in the example had been the employer at the time the worker retired and began to collect Social Security payments. There are, however, many other times and periods during a worker's employment history at which the worker's entitlement to draw Social Security benefits and the amount thereof are built up. If the Senator was thinking of the "social security employer" as any employer whose employment of the worker had affected the worker's eligibility for or increased the amount of Social Security benefits, the enactment of (A)(ii) clearly applied that concept to private and other governmental pensions, but clearly excepted Social Security (and Railroad Retirement) payments from it.

The offset provisions are clear and unambiguous. As just noted, they very specifically state a rule which, if applied to Social Security, would bring plaintiff victory, but equally specifically does not apply it to Social Security.

"When confronted by a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning. *Ex Parte Collett*, 337 U.S. 55, 61 [69 S.Ct. 944, 947, 93 L.Ed. 1207] (1949), and cases cited therein." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978). *See Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 394–95, 71 S.Ct. 745, 750–51, 95 L.Ed. 1035 (1951).

On the other hand, "a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute." *Bob Jones University v. United States*, 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983). We are unable, however, to discern with any clarity from the legislative history or elsewhere any plain purpose of Congress with which the particular chosen language is in conflict. "[T]he plainer the language, the more convincing contrary legislative history must be." *United States v. United States Steel Corp.*, 482 F.2d 439, 444 (7th Cir.), *cert. denied*, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973).

### III

District Judge Weinshienk of the District of Colorado recently reached a decision that Social Security benefits should not be offset in cases like this one. *Edwards v. Valdez*, 602 F.Supp. 361 (D.Colo.1985). She concluded that the statute at issue is ambiguous and that resort to legislative history is appropriate. Analyzing the legislative history, she evidently concluded that early in the process of formulation, condition (A)(i) was recognized as meaning that a pension payment was not to be offset if the worker had become entitled to draw that amount as a result of his earlier work for employers other than his base period employer. This would be true whether the pension payment was under Social Security or some other plan. The later drafted condition (A)(ii) embodied the foregoing concept, originally without any exception of Social Security and Railroad Retirement benefits. Judge Weinshienk evidently felt that condition (A)(ii) was not intended to have any substantive effect with or without the exception. "The net impact of the exclusion of Social Security from (A)(ii) language is to put sole control over offset of Social Security benefits under subsection (A)(i)." 602 F.Supp. at 368.

With all respect, we are not persuaded. It seems fair to say that in the situation under consideration the legislative history is ambiguous and the enacted language plain.

We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the

358

language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.

*Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

The judgment appealed from is AFFIRMED.