UNITED STATES of America, Plaintiff,

v.

Betty L. DAVENPORT, Defendant.

No. IP 89–144–CR–02.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 16, 1990.

James M. Warden, Asst. U.S. Atty. Indianapolis, Ind., for plaintiff.

Richard L. Darst, Indianapolis, Ind., for defendant.

## ORDER

BARKER, District Judge.

The frequency with which issues relating to the currency reporting statutes get litigated these days, including the frequency in this very court, reminds one, upon seeing yet another such prosecution and motion to dismiss, of the saying attributed to Yogi Berra: this is deja vu all over again. The decision in this case, in major respects, plows familiar ground.

A federal grand jury indicted Ronald and Betty L. Davenport on October 10, 1989, on twelve counts of unlawfully structuring currency transactions with domestic financial institutions for the purpose of evading the currency reporting requirements set out in 31 U.S.C. 5313(a) and 31 C.F.R. § 103.22(a). Count 1 alleges a conspiracy; Count 2 alleges a substantive violation based on an aggregate deposited amount of $81,500.00; Counts 3 through 12 allege substantive violations based on each of ten component deposits which comprise the $81,500.00 aggregate amount alleged in Count 2.

Defendant Betty L. Davenport has moved to dismiss the indictment on three grounds. First, she argues, the statute's prohibition of "structuring" is void for vagueness. Secondly, Davenport maintains that, by charging her in Counts 1 and 2 with a single violation which aggregate a series of deposits made over a fourteen-day period into several, different bank accounts and, alternatively, by charging her in Counts 3 through 12 with the individual deposits each of which was in amounts less than $10,000, the indictment fails to allege violations of section 5324(3) because that statute prohibits structuring transactions to evade reporting requirements of deposits of $10,000 or more. Third, Davenport maintains that Counts 3 through 12 war-

rant dismissal on the grounds that they are multiplicitous of Count 2.

For the following reasons, the motion to dismiss is DENIED.

## I.

■ The term "structuring," as used in section 5324(3), to proscribe certain acts, is not unconstitutionally vague.

Title 31 U.S.C. § 5324, was enacted as a part of the Anti–Drug Abuse Act of 1986 (Public Law 99–570, 100 Stat. 3207 (October 27, 1986)). Adopted as Title I of subtitle H of that Act and captioned the "Money Laundering Control Act of 1986," this law forbids the structuring of currency transactions with domestic financial institutions for the purpose of evading the reporting requirements under Title 31 U.S.C. § 5313(a), in the following manner:

§ 5324. Structuring transactions to evade reporting requirement prohibited. No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—

\*　　\*　　\*　　\*　　\*　　\*

(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.[1]

The reporting requirements referenced above are set out at 31 C.F.R. § 103.11 et seq. and direct that domestic financial institutions file a Currency Transaction Report ("CTR") each time they conduct a transaction involving currency in excess of $10,000.

Prior to January, 1989, neither the statute nor the regulations provided a specific definition of the term "structuring." On January 23, 1989, the Code of Federal Regulations was amended to add subparagraph (n) to § 103.11 which defined "Structure (structuring)," as follows:

For purposes of section 103.53, a person structures a transaction if that person, acting alone, or in conjunction with, or on

1. The parties stipulate that the indictment was brought under this section of this statute.

behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under section 103.22 of this Part. "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

At the time this definition was first proposed during the rule-making process, the Department of the Treasury noted that the enactment of section 5324 was intended to "clarify that all currency transaction structuring schemes designed to evade the reporting requirements are unlawful, regardless of whether the $10,000 threshold is met at a single financial institution on a single day." The notice of proposed rulemaking continued:

> Since the structuring provision was enacted, there has been some concern by financial institutions that neither the statute itself nor the regulation gives a formal definition of "structure" or "structuring," although the only court to consider the question ruled that the absence of a definition for the term "structuring" does not render the statute unconstitutionally vague.

*U.S. v. Scanio*, 705 F.Supp. 768 (W.D.N.Y. 1988.); 54 *Fed.Reg.* 3023 (January 23, 1989).

Defendant Davenport apparently shares this concern over a lack of definition of structuring. Having been indicted for actions alleged to have been taken by her nearly two years before this definition of "structuring" was adopted, she complains in her motion to dismiss that the vagueness of that term cripples the statute under which she has been charged and warrants the dismissal of the indictment based on a violation of that statute.

Beyond her general characterization of the term structuring, as vague, however, Davenport's criticism of the statute is itself somewhat vague. Other than noting that "structuring" was not defined by statute, by common law, or by court decisions at the time she is alleged to have violated the statute, she merely contends that one must therefore guess at its meaning. Such "guessing," when it comes to law enforcement officials, she continues, is particularly undesirable because their guesses carry particularly serious consequences in the form of arbitrary and discriminatory law enforcement. Citing the well-established principles of law relating to vagueness, Davenport maintains, but without further elaboration as to any specific harm flowing from this particular instance of vagueness and without any explication of the manner in which the vagueness of the term gives rise to possible conflicting uses or meanings, she is entitled to dismissal of the indictment.

The policy considerations which underlie the void-for-vagueness doctrine have been clearly articulated by the Supreme Court, as follows:

> The void for vagueness doctrine reflects the principle that "a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (Citation omitted.) The requirement that government articulate its aims with a reasonable degree of clarity ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values, reduces the danger of caprice and discrimination in the administration of the laws, enables individuals to conform their conduct to the requirements of law, and permits meaningful judicial review. (Citations omitted.)

*Roberts v. United States Jaycees*, 468 U.S. 609, 629, 104 S.Ct. 3244, 3256, 82 L.Ed.2d 462 (1984).

Defendant's challenge to the statute might offer greater promise but for the fact that the term "structuring" has on its face a plain meaning, and where there is a plain meaning, no guessing is required by its enforcers or by those who would fall within its proscriptions. Resort to an ordinary dictionary definition reveals that the words, "organizing," "constructing," or "arranging" are acceptable synonyms for "structuring" (*Webster's New World Dictionary*, 1965 Edition.) As another trial court noted in its denial of a similarly premised motion to dismiss in *U.S. v. Camarena*, No. E2–87–CR–133 (W.D.Tex. Apr. 7, 1988) (unpublished decision), as cited in *U.S. v. Scanio*, 705 F.Supp. 768, 774 (W.D.N.Y.1988),

> The word "structure" has no peculiar exotic or legal meaning as used in this statute; it is used in its common, ordinary, English language, dictionary meaning. When sections 313(a) and 5324 are compared and considered together, it is not difficult to determine the kind of conduct that is being prohibited.

In *Scanio*, at 776, that court also concluded:

> The term "structure," as it relates to an individual's conduct of a currency transaction, very simply refers to the manner in which the transaction is effected. Congress could just as easily have chosen the phrase, "transact in currency for the purpose of evading the reporting requirements," to reach the same conduct. The use of the word "structure" adds no mystifying element to the crime; indeed the choice of the term structure reveals an intent to focus on the "organized" nature of the currency transaction thus providing a slightly more limiting interpretation of the crime than the use of the word transact might permit. *Compare Webster's Third New International Dictionary*, at 2267 (1981) ("structure") *with id.* at 2425 ("transact" is defined to "carry on business" or "to carry out: effect, perform").

A term that is clear in its meaning and application on the face of the statute obviates the necessity of an examination of its legislative history. Nevertheless, the legislative history explicated in *Scanio*, 705 F.Supp. 768, corresponds with this judge's research and, if not for the clarity of the term on its face, would prompt a similar conclusion as was reached by the court in *Scanio*, namely, that the term, "structuring," is not unconstitutionally vague. As the Seventh Circuit Court of Appeals held in *Peare v. McFarland*, 778 F.2d 354, 357 (7th Cir.1985), "The plainer the language, the more convincing contrary legislative history must be." (Citations omitted).

Accordingly, because the plain meaning of the term "structuring" provides fair notice to the accused and to law enforcement officials charged with enforcing the statute, the statute is not void for vagueness. The lack of a statutory or legislative definition of the term at the time of the alleged acts in the indictment does not render it vague and thereby make the statute unenforceable. Section 5324(3), fully satisfies the requirement of providing a "reasonably ascertainable standard of guilt." *U.S. v. Scanio*, 705 F.Supp. 768, at 777 (quoting *Dorman v. Satti*, 678 F.Supp. 375, 380 (D.Conn.1988) and *Herndon v. Lowry*, 301 U.S. 242, 264, 57 S.Ct. 732, 742, 81 L.Ed. 1066 (1932)).

■ Even if, by relying on the undefined use of the term, "structuring," the statute were found to lack the necessary guidelines for policemen, prosecutors, and juries, the scienter requirement imposed upon the proof would satisfy the constitutional standard. Before an accused can be deemed to come within the prohibitions of the statute and suffer the consequences of their violation, she must be found to have acted specifically "for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction." This scienter requirement protects against arbitrary and capricious law enforcement and provides the standard by which the proscribed conduct is to be measured and her guilt established. *U.S. v. Thakkar*, 721 F.Supp. 1030 (S.D.Ind.1989).

■ This scienter requirement meets defendant's other objections to Count 2 of the indictment, which alleges that the wrongful

structuring occurred over a fourteen-day time period, and to Counts 3 through 12, which allege ten separate deposits, each in amounts less than $10,000. Because the statute expressly and clearly requires that, before guilt can be established, the structuring must have occurred as the result of defendant's specific intent to effect the purposeful evasion of the reporting requirements. This requirement saves the statute from attacks for vagueness, and the indictment premised on section 5324(3) need not be dismissed. (*See* discussion in Part II of this opinion, page 1375.)

Finally, the Supreme Court in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), has directed that, in determining whether a statute is unconstitutionally vague, a court "should uphold the challenge only if the enactment is impermissibly vague in all of its applications." Thus, even if this statute were unconstitutionally vague in some hypothetical sense, because there has been no showing by Davenport that the statute is vague in its application to her or "impermissibly vague in all of its applications," dismissal would be unwarranted. Without necessity of detailed elaboration, it is clear to this judge that there are many conceivable fact patterns under which structuring, as proscribed by section 5324(3), might occur, applications which would not be at all vague.

For all the above-stated reasons, the court finds that the indictment is not subject to dismissal on vagueness grounds.

## II.

Davenport's second basis for dismissal of the indictment relates to the charges against her in Counts 2 and in Counts 3 through 12. Count 2 charges her with a violation of the anti-structuring provisions based on an aggregate deposit of $81,500. made over a fourteen-day period in two different financial institutions. Counts 3 through 12 each alleges a separate deposit in a specific financial institution in an amount under $10,000. Each of these counts alleges that the defendant "for the purpose of evading the reporting require-

ments ... with respect to such transaction, (did) structure and attempt to structure a currency transaction...." Davenport maintains that with respect to Count 2, "the depositing of $81,500. over a fourteen day period is not a violation of the statute." With respect to Counts 3 through 12, she maintains that transactions of less than $10,000 require no reports and therefore the structuring of those currency transactions is not violative of the statute.

Returning to the text of the statute on which these counts of the indictment are premised, it is clear that these allegations state a violation as charged.

> § 5324. Structuring transactions to evade reporting requirement prohibited. No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—
>
> \*    \*    \*    \*    \*    \*
>
> (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions. insert from page 3—Stat. 5324.

According to the applicable regulations (31 C.F.R. § 103.11 et seq.), CTRs must be filed each time a transaction is conducted involving currency in excess of $10,000.

Davenport claims that "[t]here is nothing in the statute which prohibits the deposit of cash in the amount of $81,500 over a fourteen-day period of time without a currency transaction report.... The statute cannot be stretched to cover different deposits over a period of time into different accounts."

The essential legal elements of an offense under this statute are (1) a transaction in currency in excess of ten thousand dollars ($10,000) with one or more domestic financial institutions; (2) a purpose on the part of the defendant in structuring the deposit to evade the reporting requirements of 31 U.S.C. § 5313(a); and (3) that in so doing the defendant acted knowingly and wilfully.

Thus, with regard to Count 2, it is possible for the defendant to be found in viola-

tion of the statute if it can be proven beyond a reasonable doubt that she knowingly and wilfully structured the $81,500 currency transaction with one or more financial institutions with the intent to evade the reporting requirements. The fact that the deposits were made on ten separate occasions over a fourteen-day period in amounts under $10,000 may be evidence to refute Davenport's intent to evade the reporting requirements, but those facts, assuming their truth, do not fail to state a violation of the statute.

Similarly, the component deposits alleged respectively in Counts 3 through 12 do not warrant dismissal of those charges. So long as the government can prove that each deposit was undertaken as a part of a structuring scheme involving a currency transaction in excess of $10,000 with one or more financial institutions for the purpose of evading the requirement to file a CTR, and that in doing so the defendant acted knowingly and wilfully, a violation of the statute can be established. Inasmuch as that is what each of Counts 3 through 12 alleges, dismissal is not required.

### III.

Davenport's final basis for urging dismissal of the indictment relates to her contention that Counts 3 through 12 are multiplicitous of Count 2. Multiplicity is the charging of a single offense in separate counts. The government concedes that Counts 3 through 12 involve the same transactions as Count 2. Defendant's argument over this method of charging her in the indictment is that it will suggest to a jury greater culpability on her part thus encouraging the jury to find her guilty of something simply because of the number of counts brought against her.

Because it is possible that a jury could find Davenport guilty of some of the component acts alleged in Counts 3 through 12 and find her not guilty of Count 2 which encompasses all the deposits in the alleged structuring scheme, the counts are not subject to dismissal. If a jury determines that Davenport is guilty of Count 2, however, and that she is also guilty of one or more

of Counts 3 through 12, the conviction on Count 2 would be multiplicitous of the conviction(s) on Counts 3 through 12. In that event, the appropriate remedy would be to merge the findings of guilt and impose a single sentence on the one resultant conviction, presumably on Count 2. *United States v. Brown*, 688 F.2d 1112, 1120 (7th Cir.1982). The court will handle the matter accordingly if the evidence at trial and the jury verdict(s) warrant. Regarding defendant's concern over possible prejudice from being charged in multiple counts, the court will instruct the jury that no inference of guilt is to be drawn from the number of counts charged in the indictment.

### Conclusion

For the foregoing reasons, the indictment does not warrant dismissal on the grounds of vagueness of the statute on which the charges are premised, for failure to state violations of the statute, or for reasons of multiplicity. The motion to dismiss is accordingly DENIED.

IT IS SO ORDERED.