932 F.2d 970
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Philip S. DEVORE, Defendant-Appellant.
 No. 90-3982.
 United States Court of Appeals, Sixth Circuit.
 May 6, 1991.
 
 Before MERRITT, Chief Judge, KENNEDY and NATHANIEL R. JONES, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Philip Devore appeals his jury conviction for conspiracy to evade the reporting requirements of 31 U.S.C. Sec. 5313(a). For the following reasons, we affirm the conviction.
 
 I.
 
 2
 Don Devore and his two sons, Philip and Dale, operate a coin shop in Columbus, Ohio, called Devore's Rare Coins. On August 3, 1988, Internal Revenue Service Special Agent Frank Monaghan, acting in an undercover capacity, went to Devore's coin shop to investigate any restructuring of transactions and failures to report income. Agent Monaghan was operating under the name Frank Donovan, and he wore a recording device.
 
 
 3
 Upon entering the coin shop, Agent Monaghan first met Dale Devore. Monaghan asked to speak with Don Devore, the owner. Monaghan told Don Devore that he had been referred to the shop. Don Devore advised Monaghan to deal with his son, Dale, as he was busy working on some income taxes. Hence, Monaghan initially dealt with Dale Devore on his coin transaction, although Philip Devore was in the same area with Monaghan and Dale Devore.
 
 
 4
 Monaghan suggested to Dale Devore that he wished to purchase $50,000.00 worth of gold coins. Monaghan agreed to purchase $22,800.00 worth, the Devore's entire gold coin inventory. The balance of the $50,000.00 worth of coins could be obtained by the shop within days. Dale Devore apparently had an appointment, and he asked Philip Devore to complete the sale.
 
 
 5
 After taking over the sale, a discussion occurred between Philip Devore and Monaghan concerning sales taxes. Monaghan advised Philip that he did not want to pay sales taxes on the coins. The latter then suggested that Monaghan sign a vendor's exemption form and indicate on the form that he was buying the coins for resale. Upon being told by Monaghan that he was not a vendor Philip nevertheless urged Monaghan to take advantage of the exemption. Philip stated to Monaghan that the vendor exempt forms are never checked or verified.
 
 
 6
 At this point Dale Devore, although not handling the remainder of the transaction, was still present. A way Monaghan could avoid having his name on any forms at all would be for him to just pay the sales tax. Monaghan reiterated his desire to not pay sales taxes. Dale Devore then told Monaghan that he could simply make up a ficticious name to place on the vendor's exemption form. Philip declared to Monaghan that he could do whichever he wanted, but that if he was going to use the exemption form, he needed a name and date. Monaghan asked Philip to help him make up a name. After Philip Devore and Monaghan both came up with the name B & H Enterprises, Philip instructed Monaghan to indicate on the form that he was buying the coins for resale. He told Monaghan not to worry about an address.
 
 
 7
 When time came to sign the exemption form, Monaghan indicated that he did not want to place his real name on the form. Philip told Monaghan to put whatever he wanted on the form. Monaghan signed the form as James Riley.
 
 
 8
 Monaghan then asked what the Devores intended to do with the $22,800.00 in U.S. currency that he was using to buy the coins. Philip responded that they would not be able to deposit it all in one day. After saying that they would break it down and deposit it on different days, he added that they could deposit $10,000.00 in one day, but that would require extensive paperwork. Don Devore then appeared and Monaghan asked him about the currency transaction reports. Don Devore replied that they got snagged at the bank every once in a while, but that in this case they would write it up like four or five different sales and take a certain amount of cash in each day. Don Devore then referred to the currency transaction report by number (i.e., form # 4789). Philip then said that the purpose of the report form was to stop drug trafficking. For several minutes, Monaghan, Don Devore and Philip Devore, discussed the sale, the exemption form and why they used it the way they did, and the currency transaction report and why they avoided it. Philip Devore provided Monaghan with an invoice for the sale, listing fifty coins sold for a total price of $22,800.00.
 
 
 9
 On August 26, 1988, agents of the Internal Revenue Service executed a search warrant on the Devore coin shop. They found three sales invoices. One, in the amount of $9,120.00, was dated August 3, 1988, in the name of B & H Enterprises and was attached to a Citizen's Federal deposit ticket for $9,120.00. A second invoice, in the amount of $9,120.00, was dated August 4, 1988, in the name of B & H Enterprises and was attached to a Citizen's Federal deposit ticket in the amount of $9,120.00. The third sales invoice was dated August 5, 1988, in the amount of $4,560.00 in the name of A & B Co.
 
 
 10
 According to Citizen's Federal, the Devore coin shop did not make a cash deposit of $22,800.00 into its account in August 1988. Further, the Devore coin shop did not file a currency transaction report with the Internal Revenue Service for the August 3 Monaghan transaction until September 19, 1988, after the Internal Revenue Service had executed the search warrant. The report shows that James Riley, president of B & H Enterprises, purchased $22,800.00 in gold coins on August 3, 1988. The name "Frank Donovan" was not listed on the report.
 
 
 11
 Agent Monaghan conducted two other cash transactions with Don Devore on August 5, 1988, and August 26, 1988. On each occasion Don Devore sold "Frank Donovan" over $10,000.00 worth of gold coins. On each occasion Monaghan paid in U.S. currency. No paper trail was created that would lead back to "Donovan." Philip Devore was not present during the August 5 and August 26 transactions.
 
 
 12
 With respect to the August 5 transaction, sales invoices dividing the sale into amounts slightly under $10,000.00 were created and deposits were made or planned to be made on consecutive banking days. With respect to the August 26 transaction, the search warrant was executed within hours after the sale. Between the time of the sale and execution of the search warrant, Don Devore had deposited just under $10,000.00 of the $27,000.00 he had received at Citizen's Federal. Inside the coin shop, agents found three separate sales invoices for the $27,180.00 August 26 sale. Each invoice was for $9,060.00, with two of them dated August, 27, 1988 and August 29, 1988.
 
 
 13
 Bank records introduced at trial revealed a pattern of structuring by Don Devore from November 1987 to the date the search was executed on August 26, 1988. Cash deposits slightly under $10,000.00 were either made on consecutive days at the same bank or in two different banks on the same day, so that no single deposit exceeded $10,000.00.
 
 
 14
 On May 22, 1990, a federal grand jury returned a forty-seven count indictment against Don Devore and his son Philip. The indictment charged the two with numerous violations related to the structuring of currency transactions in violation of 31 U.S.C. Sec. 5324(3). Philip Devore was specifically charged in count one with conspiring with his father in August and September 1988 to structure currency transactions to avoid filing currency transaction reports required by 31 U.S.C. Sec. 5313(a), in violation of 31 U.S.C. Sec. 5324(3) and 18 U.S.C. Sec. 371. Counts thirty-nine, forty, forty-one, and forty-seven, charged Philip Devore with aiding and abetting Don Devore in the actual structuring of currency transactions in August 1988, in violation of 31 U.S.C. Sec. 5324(3) and 18 U.S.C. Sec. 2. The remaining forty-two counts charged Don Devore with structuring various currency transactions from November 1987 through August 1988, in violation of 31 U.S.C. Sec. 5324(3).
 
 
 15
 On July 16, 1990, a jury trial began. At the close of the government's case-in-chief, the trial judge denied the motions for directed verdict as to counts one and thirty-nine. However, the court dismissed count forty-one against Philip Devore at the request of both Philip Devore and the government. Philip Devore's motion for a directed verdict on counts forty and forty-seven was also granted because the court did not find a sufficient link between the activities of Philip Devore on August 3, 1988, and the structuring counts charged in counts forty and forty-seven.
 
 
 16
 On July 25, 1990, the jury found Philip Devore guilty of conspiring with his father to structure currency transactions as set forth in count one of the indictment. Philip Devore was acquitted of the substantive count charged in count thirty-nine. Don Devore was convicted of the conspiracy count as well as thirty-three substantive counts of structuring. On October 26, 1990, Philip Devore was placed on probation for two years and assessed $50.00 in special assessments. This timely appeal followed.
 
 
 17
 Philip Devore raises three issues on appeal: (1) whether the evidence was sufficient to sustain a jury verdict of guilty against defendant for conspiracy to structure a currency transaction; (2) whether the trial court erred in denying defendant's motion to dismiss the indictment on grounds that 31 U.S.C. Sec. 5324(3) is unconstitutionally vague; and (3) whether the trial court erred in denying defendant's request to instruct the jury that ignorance of the anti-structuring law is a defense.
 
 II.
 
 18
 The test for determining whether a conviction is supported by sufficient evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This issue need not detain us long.
 
 31 U.S.C. Sec. 5324 provides:
 
 19
 No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction--
 
 
 20
 (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a);
 
 
 21
 (2) cause or attempt to cause a domestic financial institution to file a report required under section 5313(a) that contains a material omission or misstatement of fact; or
 
 
 22
 (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.
 
 
 23
 Philip was convicted for violating 31 U.S.C. Sec. 5324(3). The record clearly reveals that there was sufficient evidence from which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 
 24
 The evidence presented at trial revealed that Philip Devore was plainly aware of the structuring scheme and its purpose. Further, the evidence showed that Philip actively participated and assisted in the structuring scheme involving Agent Monaghan. Philip Devore offered the vendor's exemption form to Monaghan knowing that he was not a vendor, helped create the ficticious names, and allowed Monaghan to avoid sales taxes. Philip explained to Monaghan how they would structure the currency they received from him in order to avoid detection by the banks. He also explained why the Devore's sought to avoid currency transaction reports. In sum, Philip demonstrated his knowledge of the structuring scheme and the purpose thereof to agent Monaghan and affirmatively participated in the structuring.[1]
 
 
 25
 The evidence indicates to us that an agreement existed between Don and Philip Devore to evade the currency transaction reporting requirements. Moreover, the evidence revealed that Philip Devore was a willing participant in this agreement. Therefore, contrary to Philip Devore's contention, he did more than just count the coins, count the cash, and complete the original invoice.
 
 
 26
 Philip Devore's argument that he committed no overt act in furtherance of the conspiracy is also unpersuasive. It is not essential in a conspiracy case that each conspirator engage in an overt act. United States v. Phillips, 630 F.2d 1138, 1146-47 (6th Cir.1980) (citation omitted). Rather, it is sufficient for the government to show an agreement between two or more persons for an unlawful purpose and an overt act by one of the co-conspirators in furtherance of the conspiracy. Id. The evidence showed that Don Devore committed several overt acts in furtherance of the conspiracy: (1) he prepared invoices for the August 3 sale to Monaghan (2) he divided the sale into amounts under $10,000.00; and (3) he deposited the money on three consecutive banking days in amounts under $10,000.00. These acts provide the overt act necessary to prove the conspiracy.
 
 
 27
 We find that there was sufficient evidence from which a rational jury could have found the essential elements of the crime beyond a reasonable doubt.
 
 III.
 
 28
 The next issue is whether the trial court erred in denying appellant's motion to dismiss the indictment on grounds that 31 U.S.C. Sec. 5324(3) is unconstitutionally vague and does not provide adequate notice of the proscribed conduct. We think not.
 
 
 29
 Appellant asserts that the key term in 31 U.S.C. Sec. 5324(3)--"structure"--is without any common, clear, or definite meaning, and therefore void for vagueness. Appellant claims that the ordinary person does not know what is permissible and what is prohibited under the statute.
 
 
 30
 The courts addressing the question of whether 31 U.S.C. Sec. 5324(3) is constitutionally vague have all concluded that it is not. United States v. Hoyland, 914 F.2d 1125, 1130 (9th Cir.1990); United States v. Davenport, 740 F.Supp. 1371, 1372-75 (S.D.Ind.1990); United States v. Maroun, 739 F.Supp. 684, 689-91 (D.Mass.1990); United States v. Scanio, 705 F.Supp. 768, 773-78 (W.D.N.Y.1988), aff'd, 900 F.2d 485 (2d Cir.1990). Like the appellant here, the defendant in Scanio argued that the statute was unconstitutionally vague and did not provide proper notice of the proscribed conduct because the word "structure" was not defined. Scanio, 705 F.Supp. at 773. In a well-reasoned opinion, the court upheld the statute because the language of the statute is unambiguous, the statute provides a reasonably ascertainable standard of guilt, and the terms of the statute are clear enough to prevent arbitrary and discriminatory enforcement. Id. at 777-78. The court was persuaded by the clear scienter requirement in the statute. We agree with the court's analysis in Scanio. Section 5324(3) is not void for vagueness.
 
 IV.
 
 31
 The final issue is whether the trial court erred in denying appellant's request to instruct the jury that ignorance of the anti-structuring statute is a defense. Like appellant's other issues, this one is also without merit.
 
 
 32
 Appellant requested the following instruction:
 
 
 33
 If you find that the accused was aware of the bank reporting law and structured his transaction to avoid report, but was unaware that such structuring itself is a crime, then you may find the defendant not guilty.
 
 
 34
 Appellant's Brief at 21. The court denied this requested instruction. In United States v. Scanio, 900 F.2d 485, 489-492 (2d Cir.1990), the Second Circuit Court of Appeals rejected the argument that the government is required to prove that defendant actually knew that structuring is unlawful in order to gain a conviction under Sec. 5324(3).
 
 
 35
 The question here is whether one must know that structuring itself is a crime in order to be convicted under Sec. 5323(3). The court in Scanio concluded that
 
 
 36
 Congress sought to protect unwary bank customers by requiring proof that they knew of, and intended to evade, the reporting provision--rather than by requiring proof that they knew that structuring is unlawful.
 
 
 37
 Id. at 491. We agree.
 
 V.
 
 38
 For the foregoing reasons, we AFFIRM the conviction.
 
 
 
 [1]
 The reporting requirements referenced in Sec. 5324 are set out at 31 C.F.R. Sec. 103.11 et seq. On January 23, 1989, the Code of Federal Regulations was amended to add subparagraph (p) to Sec. 103.11 which defined "Structure (structuring)," as follows:
 a person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements[.]
 See also United States v. Davenport, 740 F.Supp. 1371, 1372-73 (S.D.Ind.1990). We realize, however, that the defendant was convicted for conduct occurring prior to this amendment.